# CHRISTIAN KEENER *vs.* JOHN J. HARROD and RICHARD H. BROOKE.

To bind his principal, the act must be done in the exercise, and within the limits of the power delegated. Whenever a person undertakes to do an act as the agent of another, if he does not possess any authority therefor from the principal or exceeds his powers, he will be personally responsible to the person with whom he is dealing.

If an agent enters into an agreement, in confidence that his principals would sanction it, he ought to make his liability to depend on their acquiescence.

The mere introduction of the intended vendee to the seller, or disclosure of his name, does not entitle a property agent to his reward. This introduc-

tion or disclosure must be the foundation on which the negotiation was begun, and the sale made. *After this the parties cannot, by agreement between themselves, deprive the agent of his commission. An agreement to procure a purchaser, binds the party to name a person who ultimately buys the property.*

The person who undertakes to name a purchaser, does not forfeit his title to compensation, because the first offer is rejected.

This. is an appeal from Baltimore county court.

The suit was instituted by the appellees, to recover from the appellant a sum of money, claimed as the amount of compensation due them for their agency in effecting a sale of some property, known as Eastern Fountain, in the city of Baltimore; the same being the amount which defendant agreed to pay them. The declaration contained various counts, but concerning the suitableness of some of them to the case, no question was made.

The facts, as proved in. the case, were, that the appellant was the general agent for some persons residing in Philadelphia, who owned the lot, and which had a long time been for sale. In September 1847, an agent of the appellees informed the appellant, that he could procure him a purchaser, but would not disclose his name without a bonus of $500. This was objected to, and several interviews took place, and before any contract was made, the appellant wrote a letter to the agent of appellees, stating that he had referred the proposition to the appellant's principals in Philadelphia. The bonus was afterwards settled at $350, and then the agent of the appellees gave the appellant the names of the purchasers, and the names of the appellees as the persons furnishing them. The terms of sale were proved, and the appellant showed to the appellees' agent, a letter written by him to the owners in Philadelphia, telling them of the character of the security offered; and also stated to the agent, that if they rejected the security, the contract was at an end. To this the agent replied, that he would not consent to the repudiation of the contract, on the ground of the insufficiency of the security, as the purchasers were ready to make the security sufficient. These facts are

all stated by Brown, who was examined as a witness for the appellees, and was their agent in the transaction.

One of the purchasers (Barnes) was examined on the part of the appellant, and testified that the annuities offered as security were rejected by the owners, and he then said he was ready to file security on security till it was sufficient. The appellant several times asked him to make some new propositions of purchase, but he refused, as he considered the contract concluded. Finally, however, he and the other purchaser relinquished the contract, and made a new one with the appellant, but the owners in Philadelphia disavowed to him the appellant's authority to make such new contract, and at last they, that is the purchasers and owners in Philadelphia, entered into a contract, not through Keener, but by themselves, for the sale and purchase of the lot, which, except in one particular, was the same with that alleged to have been first entered into by the appellant.

It was further proved by Brown, that at the time of the contract, the appellees understood that the appellant was the general agent of the owners of the lot, who resided in Philadelphia, and that he (Brown) knew who those owners were, they being his particular friends, and his desire being to benefit them.

Upon this state of facts, five prayers were offered by the appellant, which were all rejected, the first being modified by the court and granted as modified.

The first, fourth and fifth prayers, present the view of the contract taken by the appellant, and the second and third, the propositions considered by him applicable to the contrary view. But as the court below refused all the prayers, and gave an instruction of its own, intended to cover the whole case as it appeared on the evidence, the appellant confined himself to the first prayer, and considered it with the modification appended to it by the court.

The first prayer, as offered by the appellant, was in these words: "That this action is instituted to recover the value of services, alleged to have been rendered by the plaintiffs to the

Keener vs. Harrod and Brooke.

defendant, in effecting a sale of the property mentioned in the evidence as the Eastern Fountain property, and that if the jury shall believe that the sale, as finally effected to John H. Barnes, the agent of appellees, was made by Barnes himself, directly with the owners of the property in Philadelphia, then that the plaintiffs are not entitled to recover," and the question is, whether this prayer ought not to have been granted as offered? Verdict for the appellee, the defendant below having taken exceptions.

The questions argued in this court were:—1st. Ought not the court to have given the first prayer as above, without any modification? 2nd. Was the modification right? The modification was in these words: "But if the jury believe from the evidence, that the plaintiffs did procure Messrs. Abbott and Barnes as purchasers, and that they were prepared to offer, and did in fact offer, such security for the compliance of the contract of purchase, as might be required, then plaintiffs are entitled to recover; provided the jury shall further find that the defendant did agree with Mr. Brown, as agent of the plaintiffs, if they would furnish a purchaser for the lot, to pay them the sum of $350, and that they did furnish such purchasers; and shall also further find, that at the time of making said contract with the plaintiffs, the defendant did not disclose the names of his principals."

This case was argued before Eccleston, Tuck and Mason, J.

By *F. K. Howard* and *Campbell* for appellant, and *David Stewart* for appellees.

*Howard* for the appellant.

There must be a consideration beneficial to the one party, or an injury to the other. This contract is of no benefit to Keener. The appellees were to furnish Keener, and Keener alone, with a purchaser.

The liability of agent. *Paley on Agency*, 368, 371. The agent of the appellees knew, and of course the appellees knew, who were the principals or owners. 1 *Story on Agency*, *sec.* 140. *Paley on Agency*, 262, in 28*th Law Library*.

The principal is known, the party who contracts is known, and Keener does not bind himself, so as to be liable *propria persona*.

The purchaser went to Philadelphia and bought of the owners, (the principals of Keener,) and not of Keener the agent. Because the persons who were disclosed to Keener, after abandoning the contract, afterwards happen to buy the property, is this purchase to be connected with the other contract, to which Keener, as agent, was a party?

With respect to the prayer and modification, it was calculated to mislead the jury. 1 *Gill*, 144. They are inconsistent. 1 *Gill*, *Harrison vs. Mayor*, &c. The court cannot tack to the prayer asked anything inconsistent with the prayer.

The question is, to whom the credit was given? *Story on Contracts*, *sec.* 165. 2 *Gill*, 392. The modification takes out of the hands of the jury the question of fact, to whom was the credit given?

The modification is no modification, but a contradiction of what it professes to modify. The prayer assumes that the contract was not fulfilled, unless the purchaser who was disclosed did actually purchase from Keener. The modification declares the contract to be fulfilled, even although the purchaser did not buy from Keener, yet these two inconsistent propositions are combined in a single instruction, and put to the jury.

The modification is erroneous too, because it makes the personal responsibility of the agent to depend, not upon the appellees knowing who were the principals of Keener at the time of the contract, but upon a disclosure of them at that time. The modification also is wrong, in not having put it to the jury to say, whether the credit was given to the appellant or to his principal, he being known to be an agent.

*Stewart* for the appellees.

Appellees offered to Keener to find a purchaser for him, if he would pay $500. The appellant agreed to pay $350, when the purchasers' names were disclosed, and the appellees were disclosed as the persons entitled to the bonus.

Agent may make himself personally liable. 13 *Eng. C. L.*, 428. 5 *Eng. C. L.*, 223.

Where a contract which is made with an agent, does not disclose him as an agent in the contract, he is personally liable. 11 *Mass.*, 27, 54. 12 *Mass.*, 173. 2 *Pick.*, 214, *Hastings vs. Lowering.*

He must sign as agent; if he does not, he is personally responsible. 4 *McCord*, 392.

The disclosure of his character must be made at the time of the contract. *Peake's Nisi Prius*, 130.

A credit is given to the domestic agent of a principal, who resides out of the State, unless it be otherwise agreed. 32 *C. L.*, 641. 34 *C. L.*, 267. The modification gave the jury the whole case; the prayer only one view of it.

*Campbell* in conclusion.

Keener's connection with the contract was but as agent.

Contract was not in writing. The appellees and appellant were never together. Keener had no knowledge of the appellees; derived no benefit from that which was ultimately made. The contract being made, not with Keener, but with the owners, he is entitled to no commission, and of course would not agree to pay the bonus.

To be entitled to the bonus, the appellees must find a purchaser, who actually purchases of Keener.

The first prayer gives the defendant's construction of the contract.

Whence the right of the court to modify the prayer? The modification, at all events, must be consistent with and not a contradiction of the prayer. *Story, sec.* 269, referred to by appellees' counsel, relates to written contracts—a writing into which nothing can be interpolated. Section 279, relates to

oral contracts. He referred to 2 *Gill,* 385, and read from page 392.

By the terms of the contract, the appellees were to procure *Keener,* not the *owners,* a purchaser of the lot. There is a material difference and one vital to this action, between procuring Keener a purchaser and procuring the owners one. If the sale be made through Keener's agency, his services constitute a claim against his principals, and without such an interest, Keener's promise to the appellees would be *nudum pactum,* for want of consideration in the promissor. What then is the meaning of the contract to procure Keener a purchaser? Plainly, procuring him a person who is not only willing and offers to buy from him, but who does *actually* buy from him. The appellees take the risk of the event. They do not agree to furnish a person who will offer a given sum or specified security, but a person who will offer such a sum and security as that Keener will actually sell to him, and he will actually buy from Keener. In a word, Keener is not furnished a purchaser, unless the person does actually purchase from Keener.

If this be the true construction of the contract, then the court below was clearly wrong in rejecting the first prayer, because the fact is undisputed, that the contract of sale was finally made without Keener's intervention. The purchasers met the owners in person, and made the contract directly with them.

TUCK, J, delivered the opinion of the court.

This action was instituted by the appellees, to recover compensation for services rendered in procuring a purchaser of a certain lot in the city of Baltimore, which the appellant was authorised to sell on commission, as agent for the owners in Philadelphia. It appears, that after the property had been a long time in market, the appellees offered to furnish a purchaser to the appellant, if he would pay them a bonus of $500; and that after several interviews on the subject, the appellant agreed with the agent of the appellees, "that he would pay

them $350, when the names of the persons intending to pur-
chase should be disclosed to him," which was done, and the
property afterward sold to them.   Several prayers were sub-
mitted ,by the defendant below, all of which were rejected,
except the first, which was granted with a modification.

The view which we have taken of the case, disposes of the
*second* and *third* prayers in the bill of exceptions, which are
predicated on the supposition, that the appellant entered into
this agreement as agent for the owners, and that they, alone,
are responsible to the plaintiffs.

To bind the principal, the act must be done in the exercise,
and within the limits of, the power delegated; and whenever
a party undertakes to do an act, as the agent of another, if he
does not possess any authority therefor from the principal, or
exceeds his powers, he will be personally responsible to the
person with whom he is dealing.   *Story on Agency, secs.* 261,
264.   Keener was employed to sell this property, but it no-
where appears that he had any authority to employ, in the
name of the owners, any person to assist him in making the
sale, or to procure a purchaser.   If a man charged to render
a particular service, engages another to aid him, it by no
means follows, that he can do so, at the expense of his em-
ployers, without their consent.   His own letter, set out in
the record, shews, that he had no authority so to charge the
owners, and that he expected to compensate the plaintiffs, by
dividing his own commission with them.   If he entered into
the agreement in confidence that his principals would sanction
it, he might have made his liability depend on their acquies-
cence.   This, however, was not done, and he must meet the
consequences.

Regarding this as a personal liability of the appellant, we
proceed to enquire, whether the facts presented by the record
entitled the plaintiffs to recover.

We do not agree with the counsel for the appellees, that
they would have earned their reward, by merely disclosing
the names of the persons who ultimately purchased the pro-
perty, as a secret of their business as property agents, if a

Keener *vs.* Harrod and Brooke.

sale had not been effected. We understand the rule to be this, (in the absence of proof of usage,) that the mere fact of the agent having introduced the purchaser to the seller, or disclosed names by which they came together, to treat, will not entitle him to compensation; but, if it appears that such introduction or disclosure was the foundation on which the negotiation was began and conducted, and the sale made, the parties cannot afterwards, by agreement between themselves, withdraw the matter from the agent's hands, so as to deprive him of his commission. *Russell on Factors and Brokers*, 48 *Law Lib.*, 160. *Wilkinson vs. Martin*, 34 *Eng. Com. Law*, 267. The legal import of an agreement to procure a purchaser, binds the party to name a person who ultimately buys the property. *Murray vs. Currie*, 32 *Eng. Com Law*, 641. It appears, that immediately after the names of Barnes and Abbott were disclosed, a negotiation was opened between them and Keener, and a contract concluded for the sale of the property, reserving for the approval of the owners the sufficiency of the securities they were to offer. These being rejected, others were proposed, and finally an arrangement and sale were concluded between the owners and purchasers, on the terms substantially of the contract, that they had entered into with Keener. It is insisted on the part of the appellant, that the agreement was to furnish him with a purchaser, and that as the sale was finally made by the owners themselves, he is discharged, and justly so, because not having made the sale himself, he cannot demand compensation from his principals. This question of liability, as between Keener and the owners, may be brought within the principle of the cases to which we have referred, if he has done nothing to prevent it. He was the person who brought the owners and the purchasers together, upon information derived from the plaintiffs. It can make no difference to the owners how he found the purchaser, or that the final arrangement was completed by them. They would be equally liable to him for commission, unless he has forfeited his claim thereto by some act, authorising his principals to withdraw the negotiation from his hands, and

take charge of it themselves.   We see nothing, however, in the record to warrant such an inference.   He made the contract substantially on which the sale was made.   The only cause of delay, in the first instance, being the rejection by the owners of the proffered securities, a matter with which Keener had no concern, having referred it to his principals.

The court were right in refusing the *fourth* prayer.   It denied the plaintiff's right to recover "even if they found the purchasers, unless the *plaintiffs* made the sale to them." The undertaking of the plaintiffs was, not to negotiate as to the terms of sale, and conclude the business, but merely to name a person who should buy the property.   The appellant was not entitled to the *fifth* instruction asked by him.   Barnes, one of the purchasers, proved, that he expressly refused to rescind the first contract, although Keener had again and again invited other proposals from him; and that they finally entered into a new one, which the purchasers thought more advantageous to themselves, but which the owners afterwards disavowed, as having been made by Keener, without authority. The appellant could not claim that the contract was terminated, while the owners and the vendees were negotiating, as to the securities; that being the only point on which they differed, and one which Keener himself had reserved for the decision of his principals; and more especially as the vendees were offering all the while, to increase the securities to the satisfaction of the other parties.   The facts stated, as the groundwork of the prayer, amounted to nothing more than an offer on the part of Keener, to break off the treaty if the securities first offered, should be declined by the owners.   According to the prayer, the plaintiffs' right to recover was made to depend on the contract of sale being completed upon the first proposal, although the vendees were willing, and offered to continue the negotiation :   Thus allowing the defendant to defeat the plaintiffs' claim, by refusing to negotiate with the very persons whom they had named as purchasers. We see no justice in this view of the case.   Where a party names a purchaser, his right to compensation depends on a

successful treaty, and the vendor must deal with the party named, in good faith, and afford him a reasonable opportunity to complete the purchase. If the first offer be rejected, and another proposed, it should, at least, be considered. The party naming the purchaser does not stipulate that his first proposal shall be such an one as the vendor will accept.

The court granted the *first* prayer of the defendant; but annexed a modification, to which his counsel objects, on the ground that it is inconsistent with the prayer, and because the court had no power, of its own accord, to grant the additional instruction. He cannot complain that his own prayer was granted. The question is whether he was injured by the instruction as given, that is to say, by the prayer and the modification, taken together. The court told the jury that if they found from the evidence, that the sale was finally made between the owners and vendees in person, the plaintiff's could not claim compensation, as for services rendered in furnishing the purchasers. But to this view of the case, they added another hypothesis, warranted by the evidence, and which, if believed by the jury, entitled the plaintiff's to recover, and instructed the jury accordingly. This addition to the prayer presented the law of the case, substantially, according to the views entertained by this court. If there was any error in the entire instruction, as given, it consisted in conceding to the appellant more than the facts of the case justified. But of this, he cannot complain. The court, by granting his prayer, which was part of the instruction, subjected the plaintiffs to the risk of a verdict against them, on the ground that the vendors and vendees themselves had finally arranged the business, when the proof shewed that they were brought together, and the sale ultimately made, by means of the agreement between the parties to this suit, by which the plaintiff's had become entitled to their compensation. And the last proviso of the modification places the plaintiff's right to recover, among other facts, on the defendant's not having disclosed the names of his principals, at the time of the agreement, whereas, for the reasons before stated, he was responsible to

10    v.2

the plaintiffs, whether he gave the names of the owners or not.

In 6 *Gill and John.*, 399, 404; 1 *Gill*, 144; 1 *Gill*, 280; prayers were granted with modifications. The Court of Appeals reversed the ruling of the court below, in the first and last cases referred to, not because the court had no right of its own motion, to add a qualification to the prayer; but for error in that part of the instruction. It is true that a party cannot control, or modify, the hypothesis of the prayer offered by his adversary, (1 *Gill*, 144,) but it does not follow that the court may not do so. However, as a general rule, it may be proper to grant or refuse prayers in the terms in which they are presented; the court may reject them all, and instruct the jury in their own words, or grant the prayers with such explanations or qualifications as may be necessary to a proper understanding of the law of the case. 6 *Gill and Johns.*, 404. 3 *Gill*, 481.

According to our view of the instruction, as given, it is immaterial whether the prayer and the modification were inconsistent, as urged by the appellant's counsel, or not. For any such error in the ruling of the court the plaintiffs might have complained; but the defendant cannot. In the cases referred to, on this point,—6 *Gill and Johns.*, 404; 1 *Gill*, 144; 1 *Gill* 280;—it was held, by this court, that the appellants were entitled to the instructions which they asked, and that the court below erred in annexing qualifications which destroyed the effect of the prayers as made. But, in this case, the appellant was not entitled to the gratification of his own prayer. The modification, except as to the last proviso, was in accordance with the law of the case; and the entire instruction having placed the defence on more favorable grounds than the appellant could have required, he cannot claim a reversal of the judgment. 3 *Gill and Johns.*, 472. 9 *Gill and Johns.*, 461.

*Judgment affirmed.*