# RICHARD C. HOLLYDAY ET AL. *vs.* THE SOUTHERN FARM AGENCY.

*When Real Estate Broker Not the Procuring Cause of Sale.*

The owners of a tract of land agreed to pay certain commissions to the plaintiff company, if it effected a sale thereof for a certain sum. The plaintiff offerered a lesser sum on behalf of one H and this offer was refused. Several months afterwards the land was sold by another agent of the owners to one E, who owned an adjoining tract and bought this one because he desired to secure the part thereof which bounded on a stream of water. After the sale to E he entered into negotiations with H, who had ceased to contemplate making the purchase, and sold him all of the land excepting the water front. *Held,*

that the plaintiff was not a procuring cause of the sale and is consequently not entitled to commissions.

Appeal from the Circuit Court for Talbot County (PEARCE, C. J., MARTIN and BROWN, JJ.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, SCHMUCKER and JONES, JJ.)

*Edgar H. Gans* and *Joseph C. France,* for the appellants.

*Joseph B. Seth;* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This action was brought in the Circuit Court for Talbot County by the appellees against the appellants to recover brokers' commissions for the sale of certain real estate called "Radcliffe Manor" situate near Easton in Talbot County.

The declaration states that the defendants on the 23rd day of February, 1900, by their agreement under seal, promised to pay to the plaintiffs ten *per centum* of such amount as they should receive from a sale of the farm in Talbot County, called "Radcliffe Manor," if a purchaser should be secured or introduced by the plaintiffs; that such a purchaser was secured and introduced by the plaintiffs and the farm sold by the defendants to the person so introduced for nineteen thousand, seven hundred dollars, but the defendants have not paid the amount as agreed upon, or any portion thereof.

The case was tried upon the pleas of *non est factum,* and *non infregit conventionem,* and from a judgment in favor of the plaintiffs for $1,970, this appeal has been taken.

It appears that eight exceptions were reserved at the trial of the case, seven to questions of evidence, and one to the ruling of the Court on the prayers.

The defendants' first prayer, which instructed the jury that there was no evidence legally sufficient to entitle the plaintiffs to recover, we think should have been granted and the case withdrawn from the jury.

The law applicable to brokers commissions has been settled by numerous decisions of the Courts. In the case of *Keener* v. *Harrod*, 2 Md. 70, it is said: "We understand the rule to be this, that the mere fact of the agent having introduced the purchaser to the seller, or disclosed names by which they came together to treat, will not entitle him to compensation; but if it appears that such introduction or disclosure was the foundation on which the negotiation was begun and conducted and the sale made, the parties cannot afterwards, by agreement between themselves, withdraw the matter from the agent's hands, so as to deprive him of his commission."

In the more recent case of *Livezy* v. *Miller*, 61 Md. 336, the rule is again stated ; that a broker is entitled to his commissions, if the sale effected can be referred to his instrumentality. It is also the established law that, after negotiations, begun through a broker's intervention, have virtually culminated in a sale, the agent cannot be discharged, so as to deprive him of his commissions.

In the case of *Richards* v. *Jackson*, 31 Md. 250, it was held that it is not sufficient that the broker should produce a person who enters into an agreement to purchase, but he must actually purchase, by complying with the terms agreed upon, unless his failure to do so is occasioned by the fault of the vendor.

All of the cases are in accord with those we have cited. *Attrill* v. *Patterson*, 58 Md. 251; *Melvin* v. *Aldridge*, 81 Md. 658, and *Leupold* v. *Weeks*, 96 Md. 288.

Applying, then, these rules, established by this Court, as to brokers commission, to the facts as set out in the record, we do not see upon what ground the plaintiffs can be entitled to recover in the case.

The contract upon which the suit was brought was dated the 17th day of February, 1900, and was made by the appellant, Richard C. Hollyday, on behalf of the owners of the property, with the appellees, who were at the time real estate brokers residing in the State of Virginia. By the contract the farm was placed in the hands of the appellees to be sold at the

sum of $25,000, one half cash, the residue in one, two and three years, the deferred payments to be secured by a deed of trust of the property.

It was provided by the contract that if the appellants sold the property or procured a purchaser, through other agents, they would not be liable to the appellees for commissions. The property was extensively advertised and efforts were made by the appellees to procure a purchaser.    On July 28th, 1902, an offer of $18,000 was submitted for the property by the appellees, from one, Andrew A. Hathaway, of the State of Wisconsin, but this offer was subsequently declined.

On the 10th of March, 1903, the property was sold by Wm. H. Adkins, an attorney at law, of the Easton Bar, and as agent for the owners, to John M. Elliott, for the sum of $19,700, and on the 14th of March, of the same year, a deed was executed to the purchaser.    On the 26th of March, 1903, Elliott conveyed the property to Hathaway, reserving a portion thereof, the water front.

Hathaway, who was called as a witness on behalf of the plaintiffs, testified that his offer of $18,000 for the property made through the appellees, was declined by the owners, and that he then abandoned the idea of purchasing the property; that afterwards he purchased it from Elliott.

John M. Elliott testified that he bought the property on the 25th day of February, 1903, through Mr. Adkins for the sum of $19,500, and that he had no agreement with Hathaway at that time about buying the property or of taking any interest in it; that he wanted to own the property on account of its water front, as he owned the water front of another farm near this one; that after the deed had been executed to him he entered into an agreement with Hathaway and sold him the farm except the water front.

Mr. Richard C. Hollyday, one of the appellants testified that he sold the property on the 10th day of March, 1903, to John M. Elliott through his attorney and agent Mr. Adkins, and that he had no knowledge of any of the transactions between Hathaway and Elliott until he came to Easton on or

about the 17th of March, which was after the deed had been executed, and the contract of sale had been completed.

Mr. Wm. H. Adkins testified that the sale was made to Elliott and that he informed Mr. Hollyday that the sale was to Elliott; that the deed was executed on the 14th day of March, 1903, and that prior to the 15th of March, he had no knowledge or intimation that Hathaway was in any way connected with the sale.

Upon this state of facts and the other evidence contained in the record, we think it is manifest according to the undisputed evidence in the case that John M. Elliott was the real purchaser of the property from the appellants, and the sale was effected and procured through the agency of Mr. Adkins.

The property had been placed in the hands of several agents for sale, and the evidence shows that the terms offered by Hathaway through the appellees had been rejected by the owners, and he had abandoned the idea of purchasing the property.

The knowledge by Hollyday, one of the appellants, prior to the delivery of the deed to Elliott, but subsequent to the contract of sale, of the transactions between Elliott and Hathaway, which led to the subsequent sale to Hathaway, could in no way affect the appellants' liability for commissions unless the sale effected between Elliott and the owners, could be referred to the instrumentality of the appellees.

The record, it will be seen, fails to disclose such evidence, so the judgment will be reversed and as there can be no recovery, a new trial will be refused.

*Judgment reversed, new trial refused,*
*with costs.*

(Decided January 12th, 1905.)