## DUDLEY W. COPPAGE and W. ROSS COPPAGE, Executors of Wm. S. Coppage,

### *vs.*

## J. CAMILLUS HOWARD.

*Real estate broker: commissions; must disclose name of purchaser. Prayers: inconsistent with facts. Misleading prayers.*

To entitle a broker employed to sell or find a purchaser of real estate to recover commissions, where no contract of sale is executed by his employer and the purchaser, he must show not only that he procured a person who was ready, willing and able to purchase the property upon the terms authorized by the vendor, but also that his employer was advised of that fact and given an opportunity to complete the sale to the proposed purchaser, and that it was because of the default of the vendor that the sale was not consummated.                    pp. 522-523

In general, the mere fact that the broker finds a willing and capable purchaser is not sufficient to entitle him to commissions, unless his employer is given the opportunity of profiting thereby.                                         p. 523

A broker who fails or refuses to disclose the name of the purchaser he has procured, can not recover commissions, as for having made a sale.                                 p. 525

A broker employed to sell real estate occupies a *quasi*-fiduciary relation, and must disclose all material facts which might influence the employer.                          p. 523

A contract of sale signed by one as attorney may render him personally liable, but does not bind the undisclosed principal.
                                                        p. 524

Every prayer should be framed with reference to the facts of the particular case.                              p. 525

Prayers calculated to mislead the jury are improper.   p. 525

*Decided January 14th, 1916.*

Appeal from the Circuit Court for St. Mary's County. (BEALL and CAMALIER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*George Washington Williams* (with whom was *Combs & Loker* and *John Holt Richardson* on the brief), for the appellants.

*L. Allison Wilmer* (with a brief by *Wilmer & Ching*), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought by the appellee to recover commissions for services alleged to have been rendered the appellant in procuring a purchaser of certain property of the appellant situated in St. Mary's County, Maryland.

The appellant was the owner of three farms in St. Mary's County, and on the 14th of June, 1909, signed three contracts by which he authorized the appellee to sell the farms and agreed to pay him "a commission of five per centum out of the first payment on the gross amount of the sale," with the express understanding that the appellant was to "incur no expense in the transaction" unless the sale was made. Three contracts were signed because there were three farms. and there is some confusion in these contracts, *as they are printed in the record,* in regard to the price at which the property was to be sold, but that confusion seems to be accounted for by the fact that while the clear understanding was that the appellant was to receive $20,000.00 for the three properties, and that they were to be sold for that sum plus the commissions of the appellee, separate contracts, on printed forms furnished by the appellee, were desired in order to secure a description of each farm. It also appears from the con-

tracts that the terms of sale were to be all cash, or one-half cash and the balance to be secured by a mortgage on the properties, although there is also some apparent confusion in regard to that, growing out of the fact that there were three contracts and that the entire contracts are not set out in the record.

The plaintiff testified that in June, 1913, the defendant telephoned him that he wanted $25,000.00 for the three farms, and that he would pay the commission of five per cent. on that sum, if the sale was made for that price, and that he, the plaintiff, noted the change of price on the contracts and thereafter advertised the property for sale for $25,-000.00, and then said: "Finally, on April 23, 1914, I sold the three farms to Mr. W. Bernard Duke, of Baltimore City, for $25,000.00, one-half to be paid in cash, as soon as the title could be searched and papers prepared, and the balance to be secured by a mortgage upon the property, to be paid in five years. At the time of making the sale to Mr. Duke in Baltimore City, Mr. Duke was present, with his attorney, Mr. E. McClure Rouzer; and he, Mr. Duke, directed his said attorney to prepare the contract of sale in his, Mr. Rouzer's, name, as attorney, and to sign the same as attorney. After the contract of sale had been prepared and signed, as directed by Mr. Duke, he gave it to me, with a certified check for $500.00, to take to the defendant for his signature to the contract, and to deliver the check to the defendant." The contract referred to by the witness is as follows:

"This agreement, made this 23rd day of April, 1914, by and between W. S. Coppage, of Drayden, St. Mary's County, hereinafter called the Vendor, and E. McClure Rouzer, Attorney of Baltimore, Maryland, hereinafter called the Vendee, Witnesseth:

"That the said vendor does hereby bargain and sell unto the said vendee and the said vendee does hereby purchase from the said vendor the following property situate and lying in St. Mary's County, Maryland, property known as the Carthagina Farm, containing

two hundred acres (200) more or less, property known as Cooper's Creek Farm, containing three hundred (300) acres more or less, and property known as St. George's Point Farm, containing two hundred and eighty-seven (287) acres, more or less, together with the improvements thereon and rights ¦appurtenant thereto at and for the sum of twenty-five thousand dollars ($25,000), of which five hundred dollars ($500) have been paid prior to the signing hereof. The balance of said purchase money is to be paid as follows: Twelve thousand dollars ($12,000) on or before the expiration of thirty (30) days from the date hereof, at which time a deed for the properties shall be executed at the vendee's expense by the vendor, which shall convey the property by a good and merchantable title to the vendee. At the time of the execution and delivery of the deed aforesaid the vendee shall give, and the vendor hereby agrees to accept a mortgage for the balance of said purchase money, to wit, twelve thousand and five hundred dollars ($12,500) payable five years (5) after date with interest at six per cent. (6%), the said vendee to have the right to reduce or pay off said mortgage at any time at his option.

"Taxes, insurance and other charges to be paid or allowed for by the vendor to the date of transfer.

"Executed in duplicate.

"As witness our hands and seals the day and year first above written.

...................·........(Seal)
(Signed)   E. McClure Rouzer, Atty.   (Seal)
"J. C. Howard."

The plaintiff further testified: "I carried this contract of sale * * * with the certified check for $500.00 with me to the defendant's house, on one of his farms in St. Mary's County where he then was, on the Thursday or Friday following, and handed this contract to the defendant for his signature, exhibiting and tendering to him the check for $500.00. I left him reading the contract of sale and went

into the yard; and when I returned he expressed himself delighted with the sale, and said everything was all right. He then went to his safe, or some place, to look for his deeds, as he said. After some search he said he could not find them, and that he would not sign the contract that day, as he wished to find his deeds first and to notify his children, or to talk to his children about it; but that he would be in Leonardtown the following Tuesday, when he would sign the contract and settle up. * * * He was very much pleased that the sale had been finally made. The defendant came to Leonardtown the following Tuesday and said to me he would like to reserve the Carthagina Farm, and asked me if I could get it off for him. As Mr. Duke, the purchaser, was a friend of mine, I told him I thought I could do this for him. I telephoned to Baltimore, and they finally said they would let off the Carthagina Farm, as suggested, for $6,000.00, making the price for the other two farms $19,000.00. When the defendant next came to Leonardtown I told him they would let him off with the Carthagina Farm for $6,000.00, and he then asked if I could not get him off with the whole deal, as his children were crazy for him to keep the farms, and that he would pay the full commission of $1,250.00. I told him if he would do this I might be able to get him off. Afterwards he offered to pay me $1,000.00, saying this would be proper commission after taking off Carthagina Farm; and after that he wanted to make it $950.00. I then refused his offer, and he has never paid me a cent. This was the last conversation I had with him. On his first or second visit to Leonardtown, after I had presented the contract of sale to him for his signature, according to my recollection, I told him Mr. Rouzer was acting as attorney for Mr. W. Bernard Duke in purchasing the farm, and that Mr. Duke was the purchaser. After my last conversation with the defendant in Leonardtown I received a letter from Mr. Rouzer, Mr. Duke's attorney, dated May 19th, 1914, complaining of the delay in closing the deal; and I sent the defendant this letter, with a letter from me, dated May 20th, 1914; but he never

returned the Rouzer letter to me as I requested. After that, early in June, 1914, I received a letter from the defendant saying that his farms were not for sale; and I promptly turned this letter over to my attorneys for their action." The letters referred to by the witness as having been sent to the defendant made no disclosure of the fact that Mr. Duke was the purchaser. On cross-examination the plaintiff testified "that he told the defendant who the purchaser was after he had made one or two visits to Leonardtown; that this was his recollection; that the defendant may have asked the name of the purchaser at the time the witness presented the contract of sale to him; that he does not recollect telling the defendant at the time who the purchaser was; that he did not think this was very important so long as the defendant was satisfied with the sale and was getting his price for the farms; that there might have been something said about a Connecticut man; that on previous occasions they had talked about people from Connecticut, from Cleveland and from elsewhere; that he did not know under what impression he left the defendant as to who the real purchaser was at the time he presented the contract of sale; that he did not know whether the defendant thought it was the Connecticut or Cleveland parties; * * * that he did not know if Mr. Duke is now ready to take the property; that he never carried Mr. Duke to see the defendant, and never told the defendant to commuunicate with Mr. Duke, nor did he tell Mr. Duke to communicate with the defendant; that he did not remember how many times the defendant asked him who was the purchaser; that he did not think it important the defendant should know who the purchaser was so long as he was perfectly satisfied with the sale and got his money." He also stated that he made certain changes in the contracts showing that the price at which the property was to be sold was $25,-000.00, which he thought he had a right to do upon the authority of the defendant's letter of June 20th, 1909, authorizing him to make corrections, and on re-examination tes-

tified that after defendant told him in June, 1913, that he wanted $25,000.00 for the three farms, he made a note of it on the three contracts, as stated in his cross-examination, and that he wrote nothing more and made no other change.

Mr. Duke testified: "I live in Baltimore City and am engaged in a number of enterprises. Mr. Howard, the plaintiff in this case, came to me perhaps a year before I become interested in the purchase of the Coppage farms in St. Mary's County, offering to sell me these farms. He showed me his three contracts with Mr. Coppage. I knew something about the farms, although I had not been on them for some years; so I went down, * * * with Mr. Howard and looked them over before purchasing. Finally I agreed to purchase the three farms for $25,000.00, according to the terms of the contracts of Mr. Coppage with Mr. Howard, and I instructed my attorney, Mr. E. McClure Rouzer, to prepare the contract of sale for Mr. Coppage's signature, which he did, according to my direction, and signed it as my attorney, by my direction. I had a certified check made for $500.00 and delivered to Mr. Howard to be given to the defendant. I was ready, willing and able to comply with the terms of sale as stated in the contract. I directed Mr. Rouzer, as my attorney, to write the letter to Mr. Howard of May 19th, 1914, complaining of the delay, and was then and thereafter ready, willing and able to pay for this property. I was always ready, willing and able to buy this property and to pay for it, and did not give up the idea until a month or so ago when I determined I did not care to live in the country. I could have paid cash for it, but I told Mr. Howard it would be perfectly satisfactory to take it on mortgage for one-half, according to his agreement with Mr. Coppage. I did not deal directly with Mr. Coppage, and neither saw nor spoke to him in the matter; nor did my attorney, Mr. Rouzer; all our communications and dealings being with Mr. Howard, Mr. Coppage's agent. I had the title examined by a title company at my expense. I did not care to be known in the deal at that time, and so instructed my attorney to

sign the contract of sale. Some years ago I instructed Mr. Howard, the plaintiff, with whom I have had a number of real estate transactions, not to disclose my name in making the deals. I did not give him any particular instructions in this case."

The defendant testified as follows: "I live in St. Mary's County and I am one of the judges of the Orphans' Court of St. Mary's County. I came to St. Mary's County in 1863. I remember the contract of sale signed by Mr. Rouzer which Mr. Howard, the plaintiff, handed to me to sign. Mr. Howard had called me up over the 'phone before that and said he had an offer of $23,000.00 for the property. I told him I could not consider anything less than $25,000.00. The terms of the contract of sale, as presented to me, were $25,000.00, half cash, balance on mortgage to run for five years at 5% interest. I asked him who the purchaser was, and each time he said he did not know. I thought from what he said that they were parties from Connecticut. I refused then to sign the contract. When I came to Leonardtown the following Tuesday, it being by duty as Judge of the Orphans' Court to come to town every other Tuseday, Mr. Howard said to me he would report all off and no sale, as I told him on the day the contract was presented to me and on this Tuesday that I would not sign it. This is the last conversation we had as to the sale of the property. Later, when plaintiff made a claim for commissions, we talked about commissions and some matters of compromise, the plaintiff never told me the name of the purchaser, but led me to believe that it was somebody in Connecticut. I never knew Mr. Duke was the purchaser until today. Mr. Duke never communicated with me. I listed the property so long ago it got out of my mind about listing. I improved the property at a cost of from five to ten thousand dollars; built barns, houses and wire fences on the Cooper's Creek Farm. I would have taken $25,000.00 cash. I don't think I put anything about mortgages in any of the agreements. I objected to the terms of the contract, not knowing who the

purchaser was, and to the 5% interest on the mortgage. As I did not like the terms of the sale and didn't know the purchaser, I wanted to speak to my children about it. I never accepted the terms of sale. When I signed the contracts of employment there was nothing in them as to one-half mortgage on the whole property, and I never put the words $25,000.00 three contracts on any of the contracts." On cross-examination the defendant stated that he signed the three contracts of 1909, which were shown him, and filled in the blanks but that he did not think he wrote anything about mortgages "nor the figures and words 20,000, or 25,000, three tracts in any contract." He was also shown the contract of sale offered in evidence, and he stated that it looked like the one presented to him by the plaintiff, and when he was asked what reason he gave Mr. Howard for not signing the contracts of sale on the day it was presented to him he said it was because of the 5% interest and because he wanted to talk to his children about it first, but that he did not remember giving any other reason; that he wrote the letter referred to by the plaintiff stating that the farms were not for sale, but had no recollection of receiving the letter of the plaintiff of May 20th, 1914, enclosing a letter from Mr. Rouzer.

We have set out the evidence somewhat at length because the defendant offered a number of prayers for the purpose of withdrawing the case from the jury, all of which we think, for the reasons hereinafter stated, were properly rejected.

It is important to bear in mind that the claim in this case is not for commissions on the consideration of a sale actually made, but for commissions claimed to have been earned in the performance of a contract authorizing the plaintiff to sell or to procure a purchaser for the property. In the case of *Riggs* v. *Turnbull,* 105 Md. 135, where the Court held that "a real estate broker is not entitled to recover from a vendor commissions for making a sale of property, if the purchaser produced by him fails or refuses to pay the entire purchase money, although a binding contract of sale was

executed by the vendor and purchaser," Judge Pearce had occasion to review some of the decisions in this State, and observed. "In *Keener* v. *Harrod,* 2 Md. 70, the Court said: 'The legal import of an agreement to procure a purchaser, binds the party to name a person who ultimately *buys* the property,' as was held in *Murray* v. *Currie,* 32 Eng. Com. Law, 641, cited by the Court in support of its language. In *Kimberly* v. *Henderson and Lupton,* 29 Md. 515, the Court said: 'To be entitled to their commissions as brokers they should have completed the sale, that is they should have found a purchaser in a situation, and ready and willing to complete the purchase according to the terms agreed upon. The undertaking to procure a purchaser required of the party so undertaking, to produce a party *capable* and who ultimately becomes the purchaser. These propositions are settled in *Keener* v. *Harrod and Brooke,* 2 Md. 63, and *Mc-Gavock* v. *Woodlief,* 20 How. 221.'" He also quoted the statement of the Supreme Court in the case of *McGavock* v. *Woodlief,* 20 How. 229, cited by Judge Alvey in *Kimberley* v. *Henderson, supra*: "The broker must complete the sale; that is he must find a purchaser *in a situation, and ready and willing to complete the purchase* on the terms agreed on, before he is entitled to his commissions. Then he will be entitled to them, though the vendor refuse to go on and perfect the sale." In *Schwartze* v. *Yearly,* 31 Md. 270, Judge Robinson said: "If there were a special contract, by which the appellee was not to receive any compensation, unless the property was sold at a stated price, he was not entitled to recover, unless the property was sold at that price, or unless he introduced a purchaser who was willing to buy, and was prevented from making the sale by the fault of the defendant." In the case of *Walker* v. *Baldwin & Frick,* 106 Md. 619, the Court said: "All the cases agree that the disclosure of the purchaser's name and the putting of him in communication with the defendant, by the plaintiff must be not only the foundation upon which the negotiation was *begun,* but upon which it was *conducted* and the sale ulti-

mately made. *Keener* v. *Harrod*, 2 Md. 71; *Hollyday* v. *Southern Agency*, 100 Md. 296. The broker must be shown to be the *procuring cause* of the sale. The intervention of the plaintiff in beginning the negotiations, and their subsequent culmination in a sale will not suffice unless *those negotiations* were the ultimate cause of the sale," and this language in *Walker's case* was quoted by the Court in the later case of *Martien* v. *Baltimore City*, 109 Md. 260. It is said in 19 *Cyc.* 246: "A broker employed to find a purchaser is not entitled to a commission where no sale is made, unless the purchaser, is able, ready and willing to take the property upon the terms specified by the principal. Upon producing such a person the broker becomes entitled to a commission whether or not a sale is consummated," and on page 258 of the same authority we find the statement, "If a broker who has found a customer does not take a binding contract from him, he must introduce the customer to the principal, else he is not entitled to compensation. * * * The broker must bring the parties together." By the Act of 1910, Ch. 178, sec. 17, Art. 2 of the Code (p. 5) it is provided: "Whenever, in the absence of an agreement to the contrary, a real estate broker employed to sell * * * real or leasehold estates, * * * procures in good faith a purchaser, * * * and the person so procured is accepted as such by the employer, and enters into a valid, binding and enforceable written contract of sale, purchase, etc., * * * in terms acceptable to the employer and signed by him, the broker shall be deemed to have earned his customary or agreed commission, * * * unless the performance of such contract is hindered or delayed by any act of the broker."

It is clear upon the authorities referred to that to entitle a broker employed to sell or to find a purchaser of real estate to recover commissions, where no contract of sale is executed by his employer and the purchaser, it is incumbent upon him to show not only that he *procured* a person who was ready, willing and able to purchase the property upon the terms authorized by his employer, but also that his employer was

advised of that fact and given an opportunity to complete the sale to the proposed purchaser, and that the sale was not consummated because of his employer's default. The mere fact that the broker *found* a willing and capable purchaser is not enough. It is obvious that he is not entitled to compensation for such services unless his employer is afforded an opportunity to reecive the benefits of them.

Now the evidence shows that the purchaser procured by the plaintiff was Mr. Duke, who, it appears from the evidence, was ready and willing and capable of buying the property upon the terms the appellant. agreed to sell it. But according to the evidence produced by the defendant he never knew until the day of the trial that Mr. Duke was the real purchaser, and he states that each time he asked the plaintiff who the purchaser was he said he did not know, and left him under the impression that they were parties from Connecticut. The only person that he was advised of as being the purchaser was Mr. Rouzer, who signed the proposed contract of sale as attorney, and there is no evidence in the case to show that Mr. Rouzer was capable of buying the property. But, apart from that, under the terms of the proposed sale, the defendant was required to take a mortgage for one-half of the purchase money, payable five years after date. Under such circumstances the defendant was clearly entitled to know who the purchaser was. A broker employed to sell real estate occupies a *quasi fiduciary* relation to his employer, and in his dealings with him is bound to act in good faith and to make disclosures of matters that are material and might affect the action of his employer in the premises. This principle is fully recognized in this State. *Raisin* v. *Clark,* 41 Md. 158; *Blake* v. *Stump,* 73 Md. 160; *Hambleton* v. *Rhind,* 84 Md. 456. It is said in 23 *Am. & Eng. Ency. of Law* (2nd ed.), 921: "Where the broker does not disclose the name of the purchaser the owner may refuse to sell without being liable for commissions, as he is entitled, in such case, to act upon the supposition that the broker him-

self is the proposed purchaser"; and in the case of *Gerding* v. *Haskin*, 141 N. Y. 514, 36 N. E. 601, the Court said: "Before a real estate broker can recover his compensation, he is bound to prove that he found a purchaser and produced him to his principal, ready and willing to purchase the real estate upon his terms." See also *Wylie* v. *Marine Nat. Bank*, 61 N. Y. 416; *Hayden* v. *Grillo*, 26 Mo. App. 289; *Hayden* v. *Grillo*, 35 Mo. App. 647; *Veasey* v. *Carson*, 177 Mass. 117; *Young* v. *Hughes*, 32 N. J. Eq. 372; *Pratt* v. *Patterson*, 112 Pa. St. 475; *Wilkinson* v. *McCullough*, 196 Pa. St. 205. The appellee cites the statement in 23 *Am. & Eng. Ency. of Law*, 923: "While the owner is entitled to know the name of the purchaser, and it has been asserted that so long as there is uncertainty as to the purchaser the broker can not claim performance of a contract and demand his compensation, it has also been held that the failure of the broker to disclose the name of the purchaser is not such a breach of good faith as will deprive him of the right to commissions, unless such information is material to the owner and might affect his action in the premises." But the cases cited in the note in support of the text hold that where the vendor, by reason of the terms of the sale, by which only part of the purchase money is paid in cash, is interested in the financial responsibility of the purchaser, it is the duty of the broker to disclose the name of the purchaser. *Veasey* v. *Carson, supra*, 58 N. E. 177. Mr. Rouzer would have been personally liable upon the contract of sale tendered to the defendant (*Manning* v. *Embert*, 126 Md. 544), but in order to bind his principal the contract should have been executed in his name in pursuance of an authority under seal to do so. 1 *Poe P. & P.*, sec. 358; *Citizens' F. Ins. & Land Co.* v. *Doll*, 35 Md. 89; *Wanamaker* v. *Bowes*, 36 Md. 55.

If the evidence produced by the defendant was believed by the jury, then their verdict should have been for the defendant, and the defendant was entitled to instructions presenting his theory of the case. On the other hand, the plain-

tiff testified that he told the defendant that Mr. Duke was the purchaser. If the jury accepted that view of the case, and found that the defendant with that knowledge refused to consummate the sale to him, then the plaintiff was entitled to recover.

The plaintiff's first prayer instructed the jury that if they found that the plaintiff *"procured* a purchaser" who was ready, willing and able to pay for the property, and that he notified the defendant of that fact and the defendant refused to consummate the sale, their verdict should be for the plaintiff. Every prayer should be framed with reference to the facts of the particular case, and, for the reasons stated, we think that this prayer was calculated to mislead the jury. Unless the defendant was advised who the purchaser was, and was thereby given an opportunity to consummate the sale to him, the plaintiff was not entitled to recover. This prayer was also in conflict with the defendant's ninth prayer, which was granted and which instructed the jury that if the plaintiff did not disclose the name of the real purchaser or put the defendant in communication with him, their verdict should be for the defendant. We think the modification of the defendant's ninth prayer was also calculated to mislead the jury. If the plaintiff did not disclose the name of the real purchaser or put the defendant in communication with him, the jury would not have been warranted, upon the evidence in this case, in finding that the failure of the defendant to consummate the sale was occasioned by his own fault. We find no error in the ruling of the Court on the other prayers referred to in the plaintiff's fourth exception.

At the conclusion of the testimony, the defendant moved the Court to strike out the evidence of the contract signed by Mr. Rouzer, which had been admitted by the Court subject to exception. While, for the reasons stated, the defendant was under no obligation to sign that contract, we think the contract, in connection with the testimony of the plain-

tiff and Mr. Duke, was evidence of the terms upon which the latter agreed to purchase the property, and therefore admissible for that purpose. There was no error in the rulings on the evidence referred to in the other exceptions. The plaintiff testified that he made no changes in the contracts between him and the defendant except to note thereon the change in the price at which the properties were to be sold.

The declaration is free from the objections urged by the appellant, and the demurrer was, therefore, properly overruled. While the allegations are that the plaintiff *procured* a purchaser of the property, the declaration also avers that the defendant refused to consummate a sale to the purchaser procured by the plaintiff. While we have said that the word *procured,* as used in the plaintiff's first prayer, was, in view of the evidence in the case, misleading, we think the declaration should be construed as averring that the plaintiff procured a purchaser, etc., and that the defendant refused to make the sale to *him,* which implies that the defendant was advised who the purchaser was.

By reason of the errors pointed out in the rulings in the fourth exception, the judgment of the Court below must be reversed and the case remanded for a new trial.

> *Judgment reversed, with costs to the appellant, and a new trial awarded.*