# C. POSEY HERBERT

*vs.*

# JOSEPH L. DAVIS.

*Real Estate Broker—Action for Commissions—Evidence— Instructions—Net Price.*

An instruction that plaintiff was entitled to recover the usual and customary commission if he was employed to procure and did procure a purchaser, *held,* in view of the evidence, to have been properly modified by the addition of a proviso, "unless" there was a special agreement in force at the time of the sale that no commission or compensation should be paid; such addition not tending to mislead or confuse the jury.     pp. 527, 528

A prayer telling the jury that the verdict must be for the defendant if he listed his property for sale with plaintiff, and plaintiff agreed to sell it on a net basis and not on a commission basis, *held* to be defective in making plaintiff's right to commissions dependent upon the terms of the alleged original agreement under which defendant first undertook to sell the property, without regard to changes thereafter made in said agreement as shown by the evidence.     p. 528

Defendant's prayers, submitting to the jury whether, in selling defendant's property, plaintiff was in the employ of or acting as the agent of the purchaser, and whether he used disinterested diligence and skill for defendant's benefit, *held* properly refused for lack of evidence to support them.     p. 528

Error in allowing a question to be answered is harmless when the fact stated in the answer is shown by the undisputed evidence of both parties.     p. 529

*Decided December 1st, 1921.*

Appeal from the Circuit Court for Charles County (CAMALIER and BEALL, JJ.).

Action by Joseph L. Davis against C. Posey Herbert. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Edward J. Edelen* and *John F. Mudd,* for the appellant.

*Charles Clagett,* with whom were *James Thomas, Mitchell & Digges,* and *Clagett & Thomas* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by Joseph L. Davis, the appellee, against C. Posey Herbert, the appellant, in the Circuit Court for Charles County, for commissions claimed by the appellee to be owing to him by the appellant for the sale of the latter's farm in Charles County.

Joseph L. Davis, the plaintiff, a real estate agent, or dealer, testified that in the spring of 1919 he was in Hughesville and while there saw Herbert, the defendant, and asked him if he wished to sell his farm, and he replied that he had bought it expecting to go there himself, but, having determined not to do so, "he would sell it." The plaintiff then asked him the price at which he would sell. He said that "he wanted $16,000 for it," and when asked if he would pay commission out of that said, "No; I want $16,000 net." The plaintiff said he would try to sell it for him and defendant said, "You can go ahead and sell it." Some time thereafter the defendant's farm was, by the plaintiff, shown to one Leo S. Knott, who subsequently became the purchaser of it. Knott was told by the plaintiff that he thought it could be bought "around $16,000." This Knott thought was too much for the property, but said he would come back and again look it over. The plaintiff then called up Herbert and told him he thought he had a prospect of selling his farm, but did not believe he could get his price. On the next morning, or the day after,

Herbert went to plaintiff's home at Charlotte Hall and discussed with him the sale of the farm, and plaintiff there told him the condition of the farm did not warrant the price he asked for it, but said he would do the best he could, that Knott, he thought, would come back, although he had said that he would not pay over $15,000 for the farm; that he would try to bring Mr. Knott back if defendant was inclined to take $15,000 for it. The defendant then suggested to plaintiff that he bring Knott up to see him when he came, and plaintiff then called Knott up on the 'phone and arranged that he should come the next day, or in a few days thereafter. When he came "they walked the property over thoroughly," and Knott said to him that he would not pay over $15,000 for it. The plaintiff then told him that he had no authority to consider the offer, but suggested that he should go to see Mr. Herbert. So both he and Knott called upon Herbert, who was told by the plaintiff that he had brought Knott up to discuss with him the sale of his farm. Herbert said to Knott, "Hasn't Mr. Davis told you?" and he replied, "Well I told Mr. Davis I could not give over $15,000 for it, provided you accept my terms." Knott then told him what his terms were and Herbert said, "Well, the farm is not in very good condition this year. * * * I do not expect to use the farm as a home. I have decided to sell it and I will take your offer." A contract of sale was then drawn up by Davis, by which two hundred dollars in cash was paid at the time to Herbert and the balance was to be paid as follows: Four thousand eight hundred dollars as soon as the title thereto could be examined and deed prepared and balance of ten thousand dollars was to be secured by a mortgage. It was also agreed that the purchaser should receive half of all crops of that year, and he pay the taxes for 1919.

Shortly after the day upon which the contract was executed, the plaintiff called the defendant over the 'phone and said to him, "I suppose you understand that I am expecting a commission from the sale," and Herbert said to him, "No;

I told you this was a net price, to which the plaintiff replied, "You told me the $16,000 was net. I brought a customer to you, and you agreed to take $15,000." The plaintiff then suggested to him that he did not mention "net to him" either on the occasion when he was at his home at Charlotte Hall, or upon the day the contract was executed, and, as he says, "I thought you were going to pay me a commission, as you did not say anything about the $15,000 being net to me."

After that plaintiff was at Hughesville, and again brought this question to the attention of Herbert by saying to him, "I think it is nothing more than fair that you should pay me a commission. I effected the sale and turned the customer over to you and I certainly think I am entitled to my commission." Herbert said, "Not a damn cent," and the plaintiff replied, "This is rather a wrong view to take of it." The plaintiff further testified that, on Herbert's second visit to Charlotte Hall, Herbert said to him, to get for him in the sale of the farm all that he could, but the lowest he would take was $15,000. Herbert, he said, dealt directly with Knott on the occasion when the sale was consummated and the contract executed.

Knott corroborated the plaintiff in his statements that he was shown the property by the plaintiff; that he was told by him that it could be bought for about $16,000; that he went with the plaintiff to see Herbert, and he asked him the lowest price he would take for it, and he said, that Josie (meaning the plaintiff) knew the best price, which was $15,000; that he agreed to take the farm at that price and the contract was then and there executed, which contained the agreement as to the crops and taxes, and when asked, "With whom did you make the agreement for the purchase of the farm?" he replied, "Mr. Herbert directly."

The defendant, when upon the stand, said, "Mr. Davis came to me at Hughesville and wanted to know whether I would sell the farm. I told him 'yes.' He wanted to know what I wanted for it, and I told him $16,000. He said to

me: 'You are going to pay commission?' I said, 'No, sir; I pay no commission. It has got to be your net price.'" Nothing more was said on that occasion about the sale of the farm. After that, on one occasion, upon the defendant's return from Baltimore, he was told that the plaintiff wished him to call him up over the 'phone, which he did, and the plaintiff said to him, "Well, I think I have sold your farm." "I said, 'Is that so?' He said, 'Yes.' We talked a little bit and he said, 'I don't care to talk over the 'phone. You drive down to Charlotte Hall to see me.' So I drove down there to see him, and we got to talking about the place. He said to me, 'I think you are a little steep on that place,' or something to that effect. He said, 'I will tell you what I can do. I will get you $15,000 for it.' Finally I agreed to it after a little while. I said, 'All right, sir, if you get me $15,000 for it you can sell it.' And the commission was never mentioned any more after the first time it was talked of." There was no written contract between Herbert and Davis for the sale of the property. The defendant also testified as to the conversation at his home when the plaintiff asked the defendant about his commission. The defendant in reply thereto said, "Why, your commission? It stunned me. I was surprised, because I did not think he was going to ask me any such thing. I thought everything was all fixed to start with, and I think he thought so too."

In the course of the trial one exception was taken to the admission of evidence and one to the ruling of the court upon the prayers.

The plaintiff offered one prayer which after modification by the court was granted. The defendant offered four prayers, all of which were rejected.

The jury were told by the plaintiff's prayer that if they found "from the evidence that the defendant employed the plaintiff to procure a purchaser for the property spoken of by the several witnesses, and the plaintiff did procure a purchaser for said property, and said property was sold by the

defendant to the purchaser procured by the plaintiff, if they shall so find, then the plaintiff is entitled to recover such compensation as they may find usual and customary for services so rendered; *unless, they shall further find that there was a special agreement between the plaintiff and the defendant, in force at the time of the execution of the written contract of sale offered in evidence in this case, that no commission or compensation for such services was to be paid by the defendant to the plaintiff.*

The court modified the prayer as offered by adding thereto the italicised words of the prayer.

The prayer as offered was approved in *Jones* v. *Adler,* 34 Md. 440, a case very similar to the one before us. In that case the Court said: "Where there is a special contract, by the terms of which the broker is not to be paid commissions unless he sells the property at a specified price, the sale by him at such a price is a condition precedent to his right to compensation, unless pending the negotiations, and whilst his agency remains unrevoked, the owner consents to a sale for a sum other than originally agreed upon. In this case then, although, by the terms of the original contract, the appellee was not to receive commissions unless he sold the house for $16,000, yet, if pending the negotiations, the appellant and his wife agreed to take $14,000, and the sale was made through the agency of the appellee at that price he would undoubtedly be entitled to commissions." And further on in the same opinion it is said by the Court: "It is well settled, if the agent introduces or discloses the name of the purchaser, and such introduction or disclosure is the foundation upon which negotiations are begun and the sale effected, he will be entitled to commissions and this too although in point of fact the sale may have been made by the owner. In other words, he cannot avail himself of the services, and by making a sale through information derived from the agent, deprive the latter of his commissions. *Keener* v. *Harrod,* 2 Md., 63; *Beall* v. *Treswell,* 3 Md. 196."

The objection urged against this prayer by the appellant as disclosed by the brief of his counsel is that the addition thereto made by the court tends to mislead and confuse the jury.

The prayer was no doubt modified by the court to meet the contention of the appellant that there was an agreement between the parties that no commission or compensation was to be paid by the defendant to the plaintiff for his services in connection with the sale of the property, and we cannot conceive how the same could tend to mislead or confuse the jury, or how the appellant could have been injured thereby.

By the defendant's first prayer the jury were told that if they found from the evidence that the defendant listed his property for sale with the said plaintiff and said plaintiff agreed to sell said property on a net basis (to said defendant) and not on a commission basis, then the verdict must be for the defendant.

This prayer is defective in the fact that the rights of the plaintiff to recover is made to depend upon the terms and provisions of the alleged original agreement between him and the defendant under which he first undertook to sell the property, without regard to the changes thereafter made in said agreement, shown by the evidence in the case.

His second prayer, we think, also was properly rejected.

The third prayer of the defendant submitted to the finding of the jury the question whether the plaintiff was "in the employ or acting as the agent of the said purchaser," "or that the plaintiff was acting in the interest of said purchaser." This, too, was properly rejected, as there was no evidence legally sufficient in the case upon which the jury could base their finding; and by the defendant's fourth prayer the jury was asked to find whether the plaintiff "used disinterested diligence and skill for the exclusive benefit of the defendant." This prayer was also properly rejected as there was no evidence whatever in the record showing that the plaintiff did not use disinterested diligence and skill, or that he was not acting for the exclusive benefit of the defendant.

This brings us to the rulings upon the evidence.

In the course of the trial Knott, the purchaser, was asked "Were you or not brought in contact, in reference to the purchase of this property, with Mr. Herbert through the efforts of Mr. Davis?" This question was objected to by the defendant for the reason, first, that it was leading, and second, that it submitted to the witness for his determination a question that was to be determined by the jury. The court overruled the objection and the witness answered, "Yes, sir."

Whatever may be said as to the correctness of the court's ruling thereon, it is unnecessary for us to pass upon it, in as much as it was otherwise shown by the undisputed evidence in the case, that of the plaintiff and defendant, that it was through the efforts of Davis, the plaintiff, and him alone, that Knott, the purchaser, was brought in contact with the defendant, and that the plaintiff was the procuring cause. Consequently the defendant was in no way injured by this ruling.

As we find no errors in the rulings of the court below, the judgment will be affirmed.

*Judgment affirmed, with costs.*