612 A.2d 322

Leonard S. HOMA

v.

FRIENDLY MOBILE MANOR, INC.

FRIENDLY MOBILE MANOR, INC.

v.

LEVAN, SCHIMEL, RICHMAN AND BELMAN, P.A.

No. 1797, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Sept. 9, 1992.

341

Deborah M. Whelihan (Jordan, Coyne, Savits & Lopata, on the brief), Washington, D.C., for appellant, Homa.

Jonathan A. Azrael (Azrael, Gann and Franz, on the brief), Towson, for appellant, Friendly.

Jeffrey J. Hines (Alvin I. Frederick, Deborah B. Friendly and Eccleston and Wolf, on the brief), Washington, D.C., for appellee, Levan, Schimel, Richman and Belman, P.A.

Argued before BISHOP, ROSALYN B. BELL and MOTZ, JJ.

BISHOP, Judge.

This case presents two appeals, which we shall address separately. The first appeal is taken by Leonard S. Homa ("Homa") from a judgment entered by the Circuit Court for St. Mary's County (Marvin S. Kaminetz, J.) in favor of Appellee Friendly Mobile Manor, Inc. ("Friendly") for $191,-368.16 in compensatory and punitive damages. The award was based upon the finding in a bifurcated bench trial that Homa was liable for fraud, breach of legal services contract, breach of real estate purchase contract, and breach of fiduciary duty. The second appeal, taken by Friendly is from a decision by the same court granting summary judgment in favor of Levan, Schimel, Richman and Belman, P.A. ("LSRB"), the law firm with which Homa was allegedly associated.

### Issues Presented

Homa raises the following questions:

I. Did the Circuit Court err in finding Homa liable on Friendly's claim of fraud where there was insufficient evidence to establish the legal elements of such a claim?

II. Did the Circuit Court err in finding Homa liable on Friendly's claim of legal malpractice where Friendly failed to present expert testimony to support its claims and where the alleged legal malpractice was based on a claim of breach of fiduciary duty?

III. Did the Circuit Court err in finding Homa liable to Friendly for individual breach of contract as the contract purchaser where Homa's deposit was returned and where there was no settlement between Friendly and Homa and where a novation occurred?

IV. Did the Circuit Court err in awarding punitive damages to Friendly under an implied malice standard?

### Statement of Facts

John S. Weiner ("Weiner"), a practicing real estate attorney in St. Mary's County, and Kenneth Rossignol ("Rossignol"), a real estate broker, were the principal stockholders and owners of Friendly, which owned two mobile home parks. Friendly and Homa entered into a written agreement, prepared by Homa on LSRB law firm letterhead, whereby Homa agreed to perform services "as counsel/manufactured housing consultant ... on behalf of Friendly ... in connection with the sale of the [mobile parks]...." The agreement listed specifically the following "professional legal and consulting services."

> [O]btain and produce a bona fide qualified purchaser at the listing price and on the terms as shall be accepted by the Seller [Friendly] or agreed upon in writing between the Seller and Consultant [Homa]; prepare appropriate contract of sale, *negotiate the terms of sale with prospective purchaser; attend the settlement of the sale on behalf of the Seller; perform all customary legal services* related to the sale, ... and work in cooperation with the Seller's accountant and tax adviser in order to effect the most favorable tax treatment for the Seller. (Emphasis added.)

The agreement provided that Homa was entitled to receive a procuring fee from the purchaser, and, in addition, a fee from Friendly equal to five percent of the sale price.

After Weiner and Rossignol sold one of the parks without the aid of Homa and received an offer on the second park ("Friendly Manor"), Homa offered to purchase Friendly Manor. A hand written agreement between the parties provided that Homa was entitled to a commission whether he bought the park or whether an assignee purchased it, in which case the commission was to be paid by the assignee. Homa presented, and Friendly and Homa executed, an Agreement of Sale, dated October 18, 1986, that provided,

*inter alia*, that the purchaser was obligated at closing to assume responsibility for payment of installment loans on specified financed mobile homes ("Agreement").

Homa contacted several groups of investors, including William T. Poole, a stockholder in Pascal Turner, Ltd. Poole agreed to take an assignment of the Agreement and to purchase Friendly Manor if the Agreement were modified so that the assignment excluded "contracts or agreements affecting the park for any matter for which the Purchaser will be required to assume or will become obligated." Poole testified that this modification was meant to exclude the installment loans. Weiner testified that Homa explained to him that this modification was intended to exclude assignment of maintenance or service agreements, such as agreements with the garbage collector, etc., and that Homa never indicated that the purchaser would not assume the installment loans. Friendly accepted the modifications proposed by Poole, and Poole gave Homa a check for a new contract deposit of $3,000, which Homa forwarded to Friendly. In November 1986, Poole, Homa, and Weiner met to discuss settlement terms and modifications to the terms of the Agreement.

On December 2, 1986, Homa executed an Assignment of the Agreement giving Poole's company, P/T Ltd. II ("P/T") a then unformed corporation, Homa's "right, title and interest in" the October 1986 Agreement of Sale between Friendly and Homa. On December 3, 1986, Poole, Homa, Rossignol, and Weiner attended settlement. Weiner testified that after disagreement arose between the parties over the language in the bill of sale concerning the assumption of the loans, Poole left the room, and Homa, in response to a question from Weiner and Rossignol, opined that "he didn't think it really made any difference whether Mr. Poole signed the bill of sale with that assumption language in it, ... that Mr. Poole had taken the assignment of the contract, and that Mr. Poole, at that time known as P/T, P/T was responsible under the contract of sale to assume those loans." The language of the bill of sale was modified by deleting any reference to P/T assuming the principal bal-

ances on the loan; the sellers affirmed the principal balances given on a prior page were correct; and the parties settled. Poole and Homa testified that even though Poole was not going to assume the loans, he agreed to take the homes subject to the existing loans and would make payments on the installment loans out of rents and payments he received from the renters.

Prior to settlement, Poole and Homa discussed the possibility of Homa's investing in P/T. On December 2, the day before settlement, Homa attended a meeting of the investors. P/T was incorporated in January 1987. Homa testified that he decided to do consulting work for P/T in early January 1987, and first became a shareholder in the corporation in February 1987. At the time of settlement, Homa's son was employed by Poole.

In a declaratory judgment action brought by P/T, this Court held, on appeal, that P/T was not obligated to assume the installment loans. *P/T Ltd. II v. Friendly Mobile Manor,* 79 Md.App. 227, 556 A.2d 694 (1989). Because Homa was not a party to the action, however, we would not express an opinion as to whether Homa could be required to perform his contractual duties. Subsequently, Friendly brought suit against Homa. Separate trials were held on the issues of liability and damages. The trial court, sitting without a jury, found Homa liable for fraud and also found that, because he breached his fiduciary duties as Friendly's attorney, he breached his legal services contract. It found further that Homa breached the provision in the October 1986 purchase contract to assume the installment obligations on the financed mobile homes. The court entered judgment for $159,948.16 in compensatory damages and $31,440.00 in punitive damages. Homa appeals from that judgment.

### Discussion

#### I.

Homa contends that there was insufficient evidence to establish fraud and, therefore, the trial court erred in

finding him liable for fraud. We disagree. The record supports the trial court's conclusions.

This Court will not set aside the judgment of the trial court on the evidence unless it is clearly erroneous. Md. Rule 8–131(c); *In re Trevor A.*, 55 Md.App. 491, 501, 462 A.2d 1245 *cert. granted*, 297 Md. 419, 466 A.2d 1291 (1983), *cert. dismissed*, 299 Md. 428, 474 A.2d 207 (1984). In reviewing a non-jury case we do not weigh conflicting evidence or the credibility of witnesses but, rather, we assume the truth of all evidence and inferences fairly deducible therefrom that support the factual conclusions of the trial court, and we simply inquire whether there is any evidence legally sufficient to support those findings. *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 354, 517 A.2d 1122 (1986).

■ To prove fraud the following elements must be established.

(i) Homa made a false representation of a present or past material fact;

(ii) Homa knew of its falsity or made the representation with such reckless indifference to the truth that it would be reasonable to charge Homa with knowledge of its falsity;

(iii) Homa made the representation intending that Friendly would act in reliance on it;

(iv) Friendly relied on the representation;

(v) Friendly's reliance was justified; and

(vi) Friendly suffered damages as a result of its reliance on the representation.

*Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333, 439 A.2d 534 (1982) (citing *Gittings v. Von Dorn*, 136 Md. 10, 15–16, 109 A. 553 (1920). It is well established law in Maryland that the non-disclosure of a material fact can also constitute fraud where a duty of disclosure exists. *Impala Platinum v. Impala Sales*, 283 Md. 296, 323, 389 A.2d 887 (1978). Where there is a fiduciary relationship, a duty of disclosure is imposed. A fiduciary relationship exists be-

tween an attorney and the client and " 'carries with it the requirement of utmost good faith and loyalty and the obligation of [the fiduciary] to make full disclosure of all known information that is significant and material to the affairs ... of [the fiduciary relationship.]' " *Id.* at 324, 389 A.2d 887 (quoting *Herring v. Offutt*, 266 Md. 593, 597, 295 A.2d 876 (1972)).

In the case *sub judice,* the written agreement dated October 7, 1986 between Homa and Friendly was sufficient to establish an attorney-client relationship. As Judge Kaminetz noted in his opinion, once an attorney-client relationship exists the attorney owes the client certain fiduciary duties including the duty to disclose any conflicts of interest. *Crest Inv. Trust v. Comstock,* 23 Md.App. 280, 301–304, 327 A.2d 891 (1974), *cert. denied,* 274 Md. 726 (1975).

We noted in *Crest,* 23 Md.App. at 302, 327 A.2d 891 (quoting *In re Kamp,* 40 N.J. 588, 194 A.2d 236 (1963)), that "[a] conflict of interest is inherent in the relationship of buyer and seller...." As a result,

> full disclosure requires the attorney not only to inform the prospective client of the attorney's relationship to the seller, *but also to explain in detail the pitfalls that may arise in the course of the transaction which would make it desirable that the buyer have independent counsel. The full significance of the representation of conflicting interests should be disclosed to the client so that he may make an intelligent decision before giving his consent.* If the attorney cannot properly represent the buyer in all aspects of the transaction because of his relationship to the seller, full disclosure requires that he inform the buyer of the limited scope of his intended representation of the buyer's interests and point out the advantages of the buyer's retaining independent counsel. (Emphasis added.)

*Id.* 23 Md.App. at 303, 327 A.2d 891. Likewise, if an attorney's relationship with the buyer interferes with his

ability to represent the seller, the attorney must inform the seller.

In this case, Homa agreed to act as the seller's attorney. Homa prepared the agreement on law firm stationary on which his name appeared "Of Counsel." Homa agreed to act "as counsel ... on behalf of Friendly" and provide "professional legal ... services." In particular, Homa agreed to "negotiate the terms of sale with prospective purchaser, attend the settlement of the sale on behalf of the Seller; perform all customary legal services related to the sale, ...."

The evidence included testimony by Poole that, prior to settlement, he discussed with Homa the possibility of Homa being an investor in and consultant to P/T. Homa actually became an investor in this group and attended a meeting for P/T investors. In addition, Homa's son was an employee of Poole. Clearly, Homa's position vis-a-vis Poole and P/T was material and in direct conflict with the pecuniary and negotiating interests of his client, Friendly. Even though P/T was not actually incorporated (unknown to Poole), and even if, as Homa testified, he did not actually invest or become a stockholder in P/T until after settlement, a conflict of interest existed giving rise to a duty on the part of Homa to inform Weiner and Rossignol of the conflict. Economic advantages to Poole or P/T, negotiated prior to or during settlement, could result only at the expense of Friendly. Moreover, Homa could expect at the time of the negotiations to benefit from those advantages that would accrue to him at the time he became a stockholder in and/or consultant for P/T. Homa's relationship to Poole and P/T was material because a reasonable person would attach importance to it in determining his/her choice of action in the transaction. *Brodsky v. Hull*, 196 Md. 509, 515–16, 77 A.2d 156 (1950). Weiner testified that his decisions in the transactions would have been altered if he had known of Homa's dealings with Poole and P/T.

■ There is sufficient evidence to support the court's finding that assumption of the loans, which amounted collectively to a liability of approximately $350,000, was material to the sale of the park. Both Weiner and Rossignol testified that assumption of these loans by the buyers was "crucial" to the sale, and "as important as the purchase Price." There was sufficient evidence to support the court's finding that Homa failed to inform Friendly that neither Poole nor P/T had any intention of assuming liability for the loans, even though that fact was well known to him. Poole agreed to take an assignment of the Agreement and to purchase Friendly Manor subject to the exclusion of the assumption of the loans from the Agreement. Homa prepared a letter to Weiner, dated October 30, 1986, supposedly containing language that excluded assumption of the loans. The pertinent paragraph reads: "Seller agrees at the time of settlement to acknowledge that, there are no contracts or agreement affecting the park for any matter for which the Purchaser will be required to assume or will become obligated." Testimony by Poole and Weiner made it clear that, although Homa indicated to Poole that Weiner accepted the modification, Homa explained to Weiner that the modification was meant to exclude maintenance or service agreements, such as an agreement with the garbage collector. Weiner testified that, at the time of settlement, Homa advised Weiner and Rossignol that since Poole had taken the assignment of the contract, he was responsible under the contract to assume the loans even if the bill of sale did not include assumption language. In reliance upon this advice, the language of the bill of sale was changed, and settlement resulted. There was documentary evidence, which included letters written by Homa, on behalf of P/T, to First National Bank of St. Mary's, after settlement, stating that, at the time of settlement, P/T did not assume the installment loans as evidenced by the language in the bill of sale.

Because Homa agreed to serve as counsel, was present at settlement on behalf of Friendly, provided advice when

asked by Weiner and Rossignol, and never informed Weiner and Rossignol of his interest in P/T, the court did not err in finding that Homa intended Weiner and Rossignol to rely upon the advice he provided. Because Homa knew Poole did not intend to assume the loans, and he believed that P/T did not in fact assume the loans, the court did not err in finding that Homa knew the falsity of his advice or, at a minimum, gave it with such reckless indifference to be charged with knowledge of its falsity.

Weiner and Rossignol sought and reasonably relied upon Homa's advice. They knew nothing of his financial interests in P/T. Weiner testified that, as a result of the sale without the assumption of the loans, he and Rossignol were forced to make payments on eight homes that were repossessed by the bank.

We hold that the evidence was sufficient to support the trial court's conclusion that Homa was liable under the fraud count.

## II.

Homa contends that the circuit court erred in finding him liable under the legal malpractice count because Friendly did not present any expert testimony to support its claim. He argues that a breach of a fiduciary duty should not serve as a basis for an action for legal malpractice, which predicates liability on a negligent breach of duty.

The trial court did not find negligence or legal malpractice on the part of Homa. It found that Homa intentionally violated the duties he owed to Friendly, and as a result, Homa breached his contract with Friendly.

The court did not err in finding, without the assistance of expert testimony, that Homa breached his fiduciary duty. Although expert testimony may be required in some cases to determine whether an attorney's conduct violated the standard of reasonable care or diligence in the performance of legal duties, *Central Cab Co., Inc. v. Clarke*, 259 Md. 542, 551, 270 A.2d 662 (1970), expert testimony is not

required "where the common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts." *Fishow v. Simpson,* 55 Md.App. 312, 319, 462 A.2d 540 (1983). Likewise, where the common knowledge and experience of a layperson is enough to recognize or infer an intentional violation from the facts, expert testimony is not required. As the Court noted in *Central Cab,* if the violation of a duty is obvious, the trial court should find as a matter of law that the attorney has breached a duty. 259 Md. at 551–52, 270 A.2d 662.

Homa argues that expert testimony was required because this is not a case where an attorney failed to make a disclosure; rather, he argues, the issue is whether the disclosure he did make was adequate. Homa does not specify what disclosure he made and cites no evidence to support his claim that he disclosed to Friendly any of his current or potential interest in P/T. As found by the trial judge and confirmed by our review of the record, Homa did not provide Weiner or Rossignol with even an inkling that he had an interest in P/T. Homa's failure to inform Friendly of his impending financial interest in P/T was a clear violation of his fiduciary duty as Friendly's attorney, was easily recognizable as such by a layperson, and most certainly was recognizable by a judge acting in the capacity of factfinder. Under these circumstances, expert testimony was not necessary and the trial court did not err in ruling that Homa violated his fiduciary duty to Friendly as a matter of law. *Central Cab,* 259 Md. at 551, 270 A.2d 662.

Homa contends that the court's award of damages in the amount of $38,000 for breach of his fiduciary duty is in error because the remedy for breach of fiduciary duty or fraud in the context of an attorney-client relationship is to void the transaction, which Friendly does not want to do, and because a broker is entitled to commission if he is employed by the owner and procures the sale. We disagree.

Although voiding a transaction is one remedy available for breach of contract or for fraud, it is not the only available remedy. In *Sellner v. Moore,* 251 Md. 391, 398–99, 247 A.2d 523 (1968), the Court noted that an agent hired to sell property on behalf of a principal owes a fiduciary duty to the principal and that when the agent breaches that duty, the agent may forfeit his right to compensation. As a fiduciary, the agent

> "is bound to act *in good faith* and to make disclosures of matters that are material and might affect the action of his employer in the premises." *Coppage v. Howard,* 127 Md. 512, 96 A. 642 (1916) (Emphasis added.) It has been said that the seller "in the employment of an agent to sell his property bargains for the disinterested skill, diligence and zeal of the agent for his own exclusive benefit." *Raisin v. Clark,* 41 Md. 158, 159 (1874). In *Raisin* the Court, speaking through Judge Miller, said also:

> "It is a confidence necessarily reposed in the agent, that he will act with a sole regard to the interest of the principal as far as he lawfully may." The seller of an estate is presumed to be desirous of selling it at as high a price as can fairly be obtained for it, and the purchaser is equally presumed to desire to purchase it for as low a price as he may. The interests of the two are in conflict...."

*Id.* In the case *sub judice,* Homa's fiduciary duty to Friendly arose out of two separate commitments made by him: to serve as Friendly's attorney and to serve as Friendly's agent in the sale of the mobile parks. Both relationships give rise to fiduciary duties. Homa's breach of those duties resulted in a forfeiture of his right to the compensation he received from Friendly in the transaction. The circuit court did not err in awarding damages that included the compensation paid to Homa by Friendly.

### III.

Homa contends that the circuit court erred in finding him liable to Friendly for breach of contract since Homa's

deposit was returned, there was no settlement between Friendly and Homa, and a novation occurred.

■ "Under the common law there is no implied assumption by an assignee of his assignor's obligations under the original contract merely by virtue of the assignment." *P/T Ltd. v. Friendly Mobile Manor, Inc.*, 79 Md.App. 227, 234, 556 A.2d 694 (1989). To be liable for duties under contract, the assignee must have assumed liability expressly. *Id.; Pumphrey v. Kehoe*, 261 Md. 496, 506, 276 A.2d 194 (1971). An assignor is not relieved of his obligations or liabilities under the original contract merely by assigning its benefits to a third party. *The Ruberoid Co. v. Glassman Const. Co., Inc.*, 248 Md. 97, 104, 234 A.2d 875 (1967). Even when a third party assignee assumes the duties of the assignor who is the original party to the contract, the assignor remains liable under the contract and answerable in damages if the assignee's performance is not in strict fulfillment of the contract. *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 147 Md. 588, 598, 128 A. 280 (1925).

■ Homa points to no legal authority, or pertinent provision in the Agreement for Sale, to support his argument that the Agreement of Sale was voided by the return of his deposit. Section 11 of the Agreement refers to the return of the deposit only in identifying the sole liability of Seller if the Seller is unable to convey the title to the purchaser.

As Homa notes, section 11 specifically provides that the Agreement shall become void if the parties are unable to perform the Agreement because of "matters arising or coming to the knowledge of the Seller or Purchaser *after the date of this Agreement.*" (Emphasis added.) The possibility of assignment was not such a matter. Rather, assignment was contemplated by Friendly and Homa before the Agreement was signed and is addressed in section 16 of the Agreement. Since assignment was contemplated, we are unpersuaded that settlement between Homa and Friendly was a condition precedent to Homa being bound by the

Agreement of Sale. It would be illogical for the seller to permit the assignor to assign his rights to purchase the mobile park and to receive the assignor's full benefits under the Agreement at a lower purchase price than the assignor was required to pay, without requiring the assignor to make up the difference. Homa urges us to find that the Agreement did not bind him and that he is not liable for that portion of the purchase price he failed to pass along to the assignee P/T, namely, the assumption of the installment loans. To interpret the Agreement in this manner would be absurd.

Homa further contends that a novation occurred when Friendly accepted Poole and his proposed group of investors as a substitute purchaser. The trial court did not err in finding that a novation did not occur.

A novation is the substitution of a new contract or obligation for an existing one, between the same or different parties by mutual agreement. In *I.W. Berman Properties v. Porter Brothers, Inc.*, 276 Md. 1, 7, 344 A.2d 65 (1975), the Court defined novation as

a new contractual relation made with intent to extinguish a contract already in existence. It "contains four essential requisites: (1) a previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract, and (4) the extinguishment of the old contract, by the substitution of the new one."

(Citations omitted.)

There is sufficient evidence to support the trial court's conclusion that Homa failed to carry his burden of proving that a novation occurred. Friendly and P/T did not reach agreement at settlement regarding the assumption of loans by P/T. P/T intended not to assume the loans, and Friendly intended that P/T assume them. Even though the assumption language in the bill of sale was deleted, Weiner, based on Homa's counsel, believed P/T was responsible nonetheless to assume the loans. Because Friendly believed P/T was obligated to assume the loans, it is clear

that Friendly did not agree to excuse the performance of this duty and did not agree to substitute the new agreement with P/T for the Agreement with Homa. There was not a novation because the evidence does not establish a clear and definite intent to substitute one contract for another. *Dahl v. Brunswick Corp.*, 277 Md. 471, 483, 356 A.2d 221 (1976).

## IV.

Homa contends that the trial court erred in awarding punitive damages to Friendly under an implied malice standard because the court found that actual malice was not proven by Friendly. We hold that the trial court erred in finding no "actual malice" and, therefore, we hold the award of punitive damages was appropriate.

In its recent opinion, *Owens–Illinois v. Zenobia*, 325 Md. 420, 454, 601 A.2d 633 (1992), the Court of Appeals noted that the historical purpose of punitive damages—punishment and deterrence—is furthered by awarding punitive damages based upon the heinous nature of a defendant's conduct. The Court recognized that punitive damages are awarded to punish conduct characterized by "evil motive, intent to injure, *or* fraud," *id.* at 454, 601 A.2d 633 (emphasis added), and then defined "actual malice" "as conduct characterized by evil motive, intent to injure, ill will, *or* fraud[.]" *Id.* at 460, n. 20, 601 A.2d 633 n. 20 (emphasis added).

In *Zenobia*, the Court criticized the rule outlined in *H & R Block, Inc. v. Testerman*, 275 Md. 36, 338 A.2d 48 (1975) and *Wedeman v. City Chevrolet*, 278 Md. 524, 366 A.2d 7 (1976) that distinguishes torts arising out of contracts and torts not so arising for the purpose of awarding punitive damages. The Court's criticism was based on the fact that the rule focused on when the conduct occurred rather than on the nature of the conduct. Thus the rule had no relationship to the purposes of punitive damages, had no support in Maryland cases, and led to irrational and inconsistent results. Following the reasoning enunciated in *Zenobia*, we

focus on the nature of Homa's conduct, namely fraud and breach of his fiduciary duty.

The trial court found that Homa committed fraud by failing to disclose to Friendly his interests in P/T and by making statements to Friendly that Homa knew were false, concerning P/T's intention and legal obligation to assume the installment loans.

Homa argues that, where fraud is motivated by greed and not by a desire to injure the plaintiff, punitive damages are not recoverable. In support of this contention, Homa cites *Aeropesca, Ltd. v. Butler Aviation Int'l, Inc.*, 44 Md.App. 610, 411 A.2d 1055 *cert. denied*, 287 Md. 749 (1980). In *Aeropesca*, a case involving punitive damages for fraud arising out of a contract, this court quoted from *Knickerbocker Ice Co. v. Gardiner Co.*, 107 Md. 556, 569–70, 69 A. 405 (1908),

> [E]xemplary damages might be recovered, but when the object was merely to benefit itself, although the plaintiff would be thereby injured, there would be no more reason for allowing such damages than there would be in a suit by one party to a contract against the other for breach of it.

In *Aeropesca*, we relied upon this passage to require more than fraudulent behavior to establish actual malice and justify punitive damages. We distinguish the case *sub judice* from *Knickerbocker*. *Knickerbocker* involved a tortious interference with contract claim, not fraud, and, therefore, some form of ill-will was required to warrant a finding of actual malice. Such a requirement is not inconsistent with the Court's most recent definition of "actual malice" found in *Zenobia*, 325 Md. at 460, 601 A.2d 633, which requires conduct characterized by any one of the following: "evil motive, intent to injure, ill will, *or* fraud, i.e. 'actual malice.'" (Emphasis added.) Intent to injure need not accompany fraudulent conduct in order to meet the standard for actual malice most recently articulated in *Zenobia*.

In addition, in *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 247, 469 A.2d 867 (1984), we held

> Punitive damages may be awarded in an action for deceit "where the wrong involved some violation of duty springing from a relationship of trust or confidence, or where the fraud is gross, or the case presents other extraordinary or exceptional circumstances clearly indicating malice and wilfulness." *Loyola Federal Savings & Loan Association v. Trenchcraft*, 17 Md.App. 646, 663 [303 A.2d 432] ... (1973), *quoting Fowler v. Benton*, 245 Md. [540] at 552 [226 A.2d 556]....

 The court's finding of fraud was justified by Homa's breach of fiduciary duty as a result of his failure to disclose to Friendly his pecuniary interest in P/T and Homa's false statements to Friendly concerning P/T's liability for the installment loans. We agree with the trial court and hold this egregious conduct by Homa amounts to gross fraud. In *Finch*, we found gross fraud where the attorney violated his fiduciary duty to his client by submitting to his client false and fraudulent bills, over-charging his client by $23,077 for professional services. *Id.*

Homa's actions amounted to fraud and a violation of his fiduciary duty, which clearly supports a finding of "malice and wilfulness." Friendly, therefore, established that Homa's conduct was sufficient to support the award of punitive damages.

 Homa further contends that punitive damages may not be awarded because the court did not award compensatory damages. While it is accurate that punitive damages may not be awarded unless there is an award of compensatory damages, *Nast v. Lockett*, 312 Md. 343, 349, 539 A.2d 1113 (1988), the court in the case *sub judice*, ordered the return of $38,000 received by Homa as a contingency fee based upon his breach of fiduciary duty. This a compensatory damage award that we hold to be sufficient basis for the award of punitive damages.

## SECOND APPEAL

### Issue Presented

Appellant Friendly raises this issue:

Did the trial judge err in granting judgment in favor of Levan, Schimel, Richman and Belman, P.A. under Md.Rule 2–519(b), despite unimpeached evidence that Homa was an actual or apparent agent of LSRB at the time he failed to disclose fully a conflict of interest to his client, Friendly?

### Discussion

Friendly contends that the trial court erred by granting LSRB's motion for judgment at the conclusion of Friendly's evidence because the evidence made out a prima facie case and was unimpeached. We disagree. The evidence was sufficient to support the trial court's finding that Friendly failed to prove that Homa acted with authority of LSRB.

 Maryland Rule 2–519(b) provides:

When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

 Under the Maryland rule "the trial judge [i]s allowed to evaluate the evidence, as though he were the jury, and to draw his own conclusions as to the evidence presented, the inferences arising therefrom, and the credibility of the witnesses testifying." *Lettering Unlimited v. Guy,* 321 Md. 305, 308, 582 A.2d 996 (1990) (quoting *Pahanish,* 69 Md.App. at 353, 517 A.2d 1122). The trial judge may reject the testimony of a witness on grounds of credibility, even if it is uncontroverted by other evidence. *See P. Flanigan & Sons v. Childs,* 251 Md. 646, 652, 248 A.2d 473 (1968). The

fact finding aspect of the rule is derived from Fed.R.Civ.P. 41(b). *Lettering,* 321 Md. at 308, 582 A.2d 996. The federal appellate courts review decisions under that aspect of the rule using the clearly erroneous standard. *Id.* Likewise, we review the trial court's factfinding under Md.Rule 2–519(b) using the clearly erroneous standard. *Id.* It is our function in reviewing this non-jury case to decide only whether there is any evidence legally sufficient to support the findings of the court. In our review, we assume the truth of all the evidence and favorable inferences fairly deducible therefrom tending to support the factual conclusion of the trial court. *Pahanish,* 69 Md.App. at 354, 517 A.2d 1122. Thus, a prima facie case, even with unimpeached evidence, does not automatically warrant a denial of a motion for judgment where the trial court, after assessing the credibility of the witnesses and weighing all the evidence, decides against the plaintiff.

"The existence of an agency relationship is ordinarily a question of fact[,]" *Medical Mut. Liab. Ins. So. v. Mutual Fire Marine & Inland Ins. Co.,* 37 Md.App. 706, 712, 379 A.2d 739 (1977), *cert. denied,* 282 Md. 736 (1978), and the burden of proving it is on the person who seeks to rely on it. *Flanigan,* 251 Md. at 655, 248 A.2d 473. The question before us, in the case *sub judice,* is whether the evidence, and inferences to be drawn therefrom, are sufficient to support the trial court's determination as to agency.

Agency is "a fiduciary relationship by which a party confides to another the management of some business to be transacted in the former's name or on his account, and by which such other assumes to do the business and render an account of it." 3 Am.Jur.2d *Agency* § 1. The fiduciary relationship results from the manifestation of consent by the principal to the agent that the agent shall act on the principal's behalf and subject to his control and consent, by the agent, so to act. *Id.* The authority of an agent must come from the principal and can take the form of actual authority or apparent authority. *Progressive Casualty Ins. Co. v. Ehrhardt,* 69 Md.App. 431, 440, 518 A.2d 151 (1986).

Actual authority is that which is actually granted by the principal to the agent, and it may be express or implied. *Id.* (citing 3 Am.Jur.2d *Agency* § 71, at 575 (1986)). Apparent authority is not actually granted by the principal, but the principal knowingly permits the agent to exercise the authority or holds out the agent as possessing it. *Id.*

> We have held that a statement made by an agent will not bind his principal until an agency is established and then only if the statement is within the scope of the agency, *Deane v. Big Spring Distilling Co.,* 138 Md. 388, 392–93, 113 A. 891 (1921), and that:
>
>> " * * * An agent cannot, however, enlarge the actual authority by his own acts without some measure of assent or acquiescence on the part of his principal, whose rights and liabilities as to third persons are not affected by any apparent authority which his agent has conferred upon himself simply by his own representations express or implied." *Brager `v. Levy,* 122 Md. 554, 561 90 A. 102 (1914).

*Flanigan,* 251 Md. at 654, 248 A.2d 473.

### *Actual Authority*

■ For Friendly to prevail on its claim against LSRB based on agency theory, Friendly must prove not only the existence of agency but also its nature and extent. *Medical Mut. Liab.,* 37 Md.App. at 713, 379 A.2d 739. To prove agency, Friendly must establish the existence of three elements that are integral to an agency relationship: (1) the agent is subject to the principal's right of control; (2) the agent has a duty to act primarily for the benefit of the principal; and (3) the agent holds a power to alter the legal relations of the principal. *Schear v. Motel Mgmt. Corp.,* 61 Md.App. 670, 687, 487 A.2d 1240 (1985). "There must also be a showing not only that a person is an agent of his principal but that in the particular transaction he was acting within the scope of his employment and that the acts in question out of which the [injury] arose were within the scope of the agent's authority." *Medical Mut. Liab.,* 37 Md.App. at 713, 379 A.2d 739.

The trial judge found that Friendly failed to prove that Homa acted with the authority of LSRB in his transactions with Friendly. Friendly argues that the trial court erred in granting LSRB's motion for judgment because the engagement letter dated February 7, 1986, which formed the basis of the services to be performed by Homa for Friendly, together with statements made by Homa were sufficient to prove actual agency and were unimpeached evidence. We hold the evidence was sufficient to support the trial judge's conclusion that Homa acted without LSRB authority.

Friendly relies heavily on the fact that the engagement letter was prepared on LSRB letterhead on which Homa was listed as "Of Counsel." Friendly also relies on Rossignol's testimony that, in a discussion with Homa about Homa's association with LSRB, Homa "explained to me that he had people also in the firm that would be available to him to refer back to in matters of what effect this would be with the tax laws and other aspects that may affect the property."

Although the agreement was on LSRB letterhead, the express contents of the letter, and the testimony of Weiner and Rossignol, leave no doubt that the agreement was made with and for the services of Homa personally and exclusively and not with or for the services of LSRB or any employee thereof. The letter specifically states that it "confirm[s] our [Rossignol's and Homa's] understanding with respect to services to be performed by the undersigned [Homa] as counsel/manufactured housing consultant (herein called "Consultant)...." It also lists the services that "Consultant" will perform personally and provides that Friendly will pay to "Consultant" directly the fee for services rendered. None of the terms of the agreement itself refer to any services to be performed by or fees to be paid to LSRB. There is no indication in the agreement that LSRB would in any manner manage, supervise, or otherwise control Homa's performance under the agreement. The agreement was signed by Homa individually, and without reference to the title of his position within LSRB.

Rossignol testified that after receiving the engagement letter he had a discussion with Homa about the letter and legal services Homa would provide. Rossignol testified that he referred to the tax changes that were taking place and in response Homa stated "he was in a position, through his contacts and his network of people, that he was talking to people almost—at cocktail parties that were drawing up the legislation" and it was in this context that Rossignol testified that Homa "explained to me that he had people also in the firm who would be *available to him* to refer back to in matters of what effect this would be with the tax laws...." (Emphasis added.) Given this context, it is reasonable to conclude that Homa was not offering the services of LSRB any more so than he was offering the services of his cocktail party acquaintances, but was merely listing his personal resources for accomplishing the job.

In addition, it is reasonable to conclude, based on the express terms of the agreement and lack of any evidence indicating otherwise, that Homa was not engaged in this transaction for the benefit of LSRB, and that LSRB was not to receive remuneration or other benefits for the services provided by Homa. Friendly presented no evidence of any contact with LSRB at all, or of any payments made to LSRB.

Rossignol testified that he hired Homa because Homa was the best person in the State of Maryland to deal with the sale of the mobile home park. Rossignol had known Homa for several years and knew Homa was an experienced lobbyist and trade representative in the industry. He did not know of Homa's affiliation with LSRB until he received the engagement letter. Although Rossignol testified that Homa's association with LSRB was significant because it helped him "sell the idea" of using Homa's services to Weiner, who had no previous contact with Homa, Weiner stated that he would have hired Homa regardless of his association with LSRB. This testimony by Rossignol and Weiner suggests that Homa's role in this transaction was not as an agent for LSRB and supports the

trial judge's conclusion that Homa was acting on behalf of himself.

### Apparent Authority

Apparent authority is defined as the power to affect the legal relations of another person by transactions with a third person arising from the other person's manifestations to the third person. Thus, apparent authority of an agent results from statements, conduct, lack of ordinary care, or other manifestation of the principal's consent, whereby a third person is justified in believing that the agent is acting within his authority. Apparent authority may be implied where the principal passively permits the agent to appear to a third person to have authority to act on his behalf. 3 Am.Jur.2d *Agency* § 79.

"The apparent power of an agent is to be determined by the acts of the principal, and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct and statements have created the apparent authority." *Id.*

The party seeking to rely on the agency relationship based upon apparent authority must establish:

(1) that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal.

*Id.* § 80 (footnotes omitted).

In the case *sub judice,* Friendly presented no evidence of any contact with or reliance upon any conduct by LSRB that would establish that LSRB authorized Homa to act on

its behalf in this transaction or that LSRB stood to benefit in any way from the agreement between Friendly and Homa. Even though there is one piece of correspondence on LSRB letterhead, and as Friendly notes Homa's personal stationary indicated shared office space with LSRB, there is no evidence that LSRB knew or should have known about this particular transaction. No fees were to be paid to LSRB; moreover, fees were to be paid to Homa only if he personally procured a bona fide qualified purchaser for Friendly Manor (the agreement did not provide a separate fee for his legal services). In addition, as discussed *supra,* the evidence is sufficient to support the finding that Homa was not hired by Rossignol and Weiner because of his association with LSRB and would have been hired even if not associated with LSRB.

For these reasons, we hold the trial judge was not clearly erroneous in finding the evidence insufficient to persuade him that Friendly relied upon an agency between LSRB and Homa based on apparent authority.

JUDGMENT AGAINST HOMA, IN FAVOR OF FRIENDLY, IS AFFIRMED. JUDGMENT AGAINST FRIENDLY, IN FAVOR OF LEVAN, SCHIMEL, RICHMAN AND BELMAN, P.A., IS AFFIRMED. COSTS TO BE PAID 75% BY HOMA AND 25% BY FRIENDLY.