701 A.2d 1325

MARIUSZ STARON AND ELZBIETA STARON, PLAINTIFFS–AP-PELLANTS, v. SHELDON G. WEINSTEIN, DEFENDANT, AND ROBERT C. THELANDER, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 15, 1997—Decided November 12, 1997.

Before Judges LONG, STERN and KLEINER.

*Deena Baruch* argued the cause for appellants (*John A. Grudak,* attorney; *Mr. Grudak,* on the letter brief).

*Rachelle H. Milstein* argued the cause for respondent Robert C. Thelander (*Fishman & Callahan,* attorneys; *Ms. Milstein,* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

After attorney Sheldon Weinstein defaulted in this legal malpractice action, summary judgment was granted in favor of defendant Robert C. Thelander, and plaintiffs appeal from the dismissal of their case against him. We reverse the grant of summary judgment to Thelander.

The issue before us relates to the responsibility of attorney Thelander for the alleged malpractice of Weinstein in letting a

statute of limitations run after he was retained to represent plaintiffs. Plaintiff Mariusz Staron was allegedly injured in an automobile accident on or about October 20, 1985, and the parties agree that the complaint had to be -but was not -filed within two years thereof.

The record before the judge on Thelander's motion for summary judgment reveals the following. After the accident, plaintiff was referred to Weinstein by a friend. He recalled meeting Weinstein in "at least two" locations. Plaintiff first met with Weinstein at his Elizabeth office and thereafter "in a different place." He did not recall seeing Weinstein "in any offices that bore the name of Robert Thelander, Esq." or "at 603 Springfield Avenue in Summit," Thelander's address, or "ever meeting with" Thelander.

An "Agreement to Provide Legal Services" ("retainer agreement"), dated November 7, 1985, was executed by plaintiffs and Weinstein. The first page of the agreement refers to "Sheldon G. Weinstein, Esq. whose address is 603 Springfield Ave., Summit, NJ" as the "law firm" retained, but on the second page the law firm is listed as "Robert C. Thelander, Esq." above Weinstein's signature. In a letter addressed to State Farm County Mutual Insurance Co. ("State Farm") dated November 8, 1985, a day after the retainer was executed, Weinstein wrote on Thelander stationery that "we represent" Mariusz Staron and requested Personal Injury Protection benefits. Weinstein was listed as "OF COUNSEL" on the top right corner of Thelander's stationery, and a copy of the letter was sent to plaintiffs. Another letter to State Farm dated the same day on similar Thelander stationery was sent by Weinstein, with a copy to plaintiffs, making a claim based on the driver's negligence.

In his motion for summary judgment Thelander certified:

6. By letter of August 15, 1986, I advised Mr. Weinstein that I was terminating my relationship with him. At that time, my secretary prepared an inventory of pending matters of which I was aware and unpaid bills for services previously rendered and sent them to Mr. Weinstein. With respect to suits in process, I prepared and filed Substitutions of Attorney with various courts involved and

further wrote to all of the clients of whom I had knowledge, advising them that Mr. Weinstein and I were discontinuing our association and giving them Mr. Weinstein's home address so that they could contact him directly as their lawyer....

7. My first knowledge of Mr. and Mrs. Staron's relationship with Mr. Weinstein was upon my being served with the Summons and Complaint in the present matter.

8. My relationship with Mr. Weinstein was fully terminated as of September 30, 1986.

.    .    .    .    .    .    .    .

10. At no time did Mr. Weinstein ever advise me of the existence of Mr. and Mrs. Staron as his clients, nor was there any file kept in my office on their behalf to my knowledge.

Plaintiff last met with Weinstein in or around 1989. In that year plaintiff had a second accident but decided to see another attorney because of the delay it was taking to process the first case.

In granting summary judgment, the motion judge relied on *Homa v. Friendly Mobile Manor, Inc.*, 93 *Md.App.* 337, 612 *A.*2d 322 (1992), *cert. granted*, 329 *Md.* 168, 617 *A.*2d 1085, *and cert. dismissed*, 330 *Md.* 318, 624 *A.*2d 490 (1993), and found no "apparent authority" by which Weinstein could bind Thelander or his firm.

*Homa, supra*, involved a suit brought against an attorney and his law firm for fraud, breach of contract, and breach of fiduciary duty owed to the client. One of the issues before the Court of Special Appeals was the liability of the firm for the conduct of attorney Homa. In concluding that Homa had no actual authority to bind the firm, notwithstanding that the "engagement letter" was prepared on the firm stationery with his name listed as "Of Counsel," 612 *A.*2d at 334, the court considered the proofs regarding the nature of the services to be rendered, the reasons why plaintiff selected Homa personally to do the work and Homa's personal involvement as a consultant in the underlying transaction, plaintiff's lack of knowledge of Homa's "affiliation with [the firm] until he received the engagement letter" and the lack of remuneration to be paid to the firm. *Id.* at 334. Upon review of

the proofs resulting in the trial court's judgment for the firm after hearing plaintiff's evidence at trial, the court concluded:

In addition, it is reasonable to conclude, based on the express terms of the agreement and lack of any evidence indicating otherwise, that Homa was not engaged in this transaction for the benefit of [the Firm], and that [the Firm] was not to receive remuneration or other benefits for the services provided by Homa. Friendly presented no evidence of any contact with [the Firm] at all, or of any payments made to [the Firm].

[*Homa, supra,* 612 A.2d at 334.]

With respect to the claim of "apparent authority" the *Homa* court said:

The party seeking to rely on the agency relationship based upon apparent authority must establish:

(1) that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal. [3 *Am.Jur.*2d Agency] § 80 (footnotes omitted).

In the case *sub judice,* Friendly presented no evidence of any contact with or reliance upon any conduct by [the Firm] that would establish that [the Firm] authorized Homa to act on its behalf in this transaction or that [the Firm] stood to benefit in any way from the agreement between Friendly and Homa. Even though there is one piece of correspondence on [the Firm] letterhead, and as Friendly notes Homa's personal stationery indicated shared office space with [the Firm], there is no evidence that [the Firm] knew or should have known about this particular transaction. No fees were to be paid to [the Firm]; moreover, fees were to be paid to Homa only if he personally procured a bona fide qualified purchaser for Friendly Manor (the agreement did not provide a separate fee for his legal services). In addition, as discussed *supra,* the evidence is sufficient to support the finding that Homa was not hired by Rossignol and Weiner because of his association with [the Firm] and would have been hired even if not associated with [the Firm].

[*Homa, supra,* 612 A.2d at 335.]

■ We conclude that the motion judge's reliance on *Homa* was misplaced. In fact, the *Homa* court's review of the evidence presented at trial emphasizes why summary judgment was improperly granted in this case involving a retainer for purposes of litigation. Proper resolution of the issues in this case requires a detailed evaluation of the facts including whether plaintiffs intend-

ed to retain only Weinstein to represent them as their attorney; whether his relationship with Thelander became relevant to their decision to sign the retainer agreement; whether Thelander was to be involved in the handling of Weinstein's trials and in whose name the pleadings were to be filed; what fees, if any, Thelander was to receive upon recovery; whether plaintiffs knew of the dissolution of the Thelander relationship before the malpractice occurred and continued to have Weinstein represent them, and why Thelander failed to notify plaintiffs of the dissolution.

"A lawyer is of counsel if designated as having that relationship with a firm or when the relationship is regular and continuing although the lawyer is neither a partner in the firm nor employed by it on a full-time basis." Restatement of the Law (Third), *Restatement of the Law Governing Lawyers,* § 203, cmt. c(ii) (Proposed Final Draft No. 1, 1996). While the term "of counsel" has also been used to signify the attorney responsible for litigation, as opposed to, for example, the lawyer who drafted the brief, the term has also been defined to apply "to the counsel employed by a party in a cause, and particularly to one employed to assist in the preparation or management of an action, or its presentation on appeal, but who is not the principal attorney of record for the party." *Black's Law Dictionary* 975 (5th ed.1979).

In the context of a motion for summary judgment, plaintiffs made a sufficient showing that Thelander's firm became counsel for plaintiffs by virtue of both the retainer agreement and the fact that Weinstein had at least apparent authority to enter into such agreements on behalf of the firm. *See Restatement of the Law Governing Lawyers, supra,* § 26, cmts. a, e (incorporating agency principles including "apparent authority to act for the lawyer in undertaking a representation"); Rodriguez v. Hudson County Collision Co., 296 N.J.Super. 213, 220–21, 686 A.2d 776, 779–780 (App.Div.1997).[1] As to a law firm's vicarious liability, it is established that every partnership member is jointly and severally

---

[1] We need not consider if Weinstein had actual authority to enter a retainer agreement on behalf of the Thelander firm at the time it was executed.

liable for torts committed by other members of the partnership acting within the scope of the firm business. *See, e.g., Falzarano v. Leo.* 269 *N.J.Super.* 315, 320–21, 635 *A.2d* 547 (App.Div.1993) (this is so even though "they do not participate in, or ratify, or have knowledge of such negligence or legal malpractice"); *R.P.C.* 5.1; *R.P.C.* 7.5; *Restatement of the Law Governing Lawyers,* § 79 (Tentative Draft No. 8, 1997). Moreover,

Many lawyers practice as partners, members, or associates of law firms. When a client retains a lawyer with such an affiliation, the lawyer's firm assumes the authority and responsibility of representing that client, unless the circumstances indicate otherwise ... and the firm is liable to the client for the lawyer's negligence. (See § [79] [Chapter 4]). Should the lawyer leave the firm, the client may choose to be represented by the departing lawyer, the lawyer's former firm, neither or both (see §§ 43 & 44).

[*Restatement of the Law Governing Lawyers, supra,* § 26, cmt. h.]

Having become counsel for plaintiffs, it was the responsibility of the Thelander firm to either terminate the representation or give notice that it was terminated by virtue of Weinstein's departure.

In terminating a representation, a lawyer must take steps to the extent reasonably practicable to protect the client's interests, such as *giving notice to the client of the termination,* allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee the lawyer has not earned.

[*Restatement of the Law Governing Lawyers, supra,* § 45(1) (emphasis added).]

*Cf. Restatement, supra,* § 79, cmt. (i) (principal's vicarious liability "does not extend to acts and omissions occurring after the lawyer ceased to be a firm principal, except to the extent that failure to give proper notice of a dissolution or withdrawal may result in continuing responsibility for the firm's affairs.")

Nevertheless, there are some exceptions to the general rule:

The firm and its principals are ordinarily liable for wrongful acts and omissions of lawyers who have an of-counsel relationship with the firm (*see* § 203, Comment (c)(ii)) [quoted above in this opinion], to the extent that and while they are doing firm work. However, the scope of liability for acts of an of-counsel lawyer may be affected by the terms of the of-counsel relationship and the extent of the lawyer's affiliation to the firm apparent to the lawyer's clients.

*Restatement, supra,* § 79, cmt. (c).

*See also Homa, supra,* 612 *A.2d* at 334–35.

It is undisputed that Thelander did not know of plaintiffs' case, and he gave no notice to plaintiffs of the disillusion of his firm's

relationship with Weinstein on that ground. It is also uncontested that the malpractice did not occur until over a year after the relationship was terminated.

However, the retainer agreement referred to Thelander as the firm retained. Moreover, no written agreement between Thelander and Weinstein, either when their relationship was created or ended, was produced in discovery or presented to the motion judge.[2] In fact, neither the deposition of Weinstein[3] nor Thelander was taken or considered on the motion. Thus, Thelander's role in Weinstein's cases and his entitlement to a share of the proceeds of any recovery obtained by Weinstein was not developed. *See R.P.C.* 1.5(c). Additionally we do not know what systems Thelander developed, or tried to employ, to assure knowledge of, and proper control over, cases which were retained by Weinstein as "of counsel" to his firm. Therefore we reject the theory that Thelander was not liable as a matter of law for any malpractice committed by Weinstein in these circumstances. Accordingly, we reverse the grant of summary judgment and remand for further proceedings on the issues raised.

---

[2] The record does include Thelander's letter to Weinstein, dated August 15, 1986, terminating their relationship as of September 30, 1986. Therein, Thelander mentions knowing nothing about certain matters and complaints he had heard about Weinstein. He refers to the division of fees and trust funds, and says "I will advise people in regard to pending matters that, as of September 30, 1986, we are no longer associated and that they should contact you in regard to the cases which they have requested you to handle on their behalf." The record also contains subsequent letters about fees in given cases.

[3] Weinstein was suspended from the practice of law for three months, effective July 15, 1996, "and until further Order of the [Supreme] Court," and should be available as a witness. *In re Weinstein,* 144 *N.J.* 367, 368–69, 676 A.2d 1086 (1996).