NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2148
_____

ANTHONY Z. EMMANOUIL; EUGENIA K. EMMANOUIL,
and  WEST BELT AUTO SUPPLY, INC.

v.

VINCENT VICTOR ROGGIO; CALLIE LASCH ROGGIO;
NOVED REAL ESTATE CORP; and JEAN WAKLAIS


VINCENT ROGGIO

v.

ANTHONY Z. EMMANOUIL, EUGENIA K. EMMANOUIL, WEST BELT AUTO
SUPPLY, INC.
and CONCEPCION ROJAS & SANTOS, LLP

VINCENT V. ROGGIO,
                                    Appellant


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 3-06-cv-01068)
District Judge: Honorable Garrett E. Brown
_____

Argued April 26, 2012
_____

1

Before: GREENAWAY, JR., ROTH, and TASHIMA,[*] *Circuit Judges*.

(Opinion Filed: September 24, 2012)

_____

OPINION

_____

Hussam Chater, Esquire
Harold Goldman, Esquire
Ansell, Zaro, Grimm & Aaron
1500 Lawrence Avenue
Ocean Township, NJ 07712

John J.E. Markham, II (argued)
Markham & Read
One Commercial Wharf West
Boston, MA 02110
       *Counsel for Appellants*

Christopher J. Carey, Esquire (argued)
Loren L. Speziale, Esquire
Graham Curtin
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962
       *Counsel for Appellees Concepcion, Rojas & Santos, LLP*

Michael C. Delaney, Esquire
James DiGiulio, Esquire
Scott A. Levin, Esquire
Louis A. Modugno, Esquire (argued)
McElroy, Deutsch, Mulvaney & Carpenter
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-207

---

[*] Honorable A. Wallace Tashima, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

*Counsel for Appellees Anthony Emmanouil, Eugenia Emmanouil and West Belt Auto Supply, Inc.*

GREENAWAY, JR., *Circuit Judge*.

This matter arises from a complex series of business transactions involving Anthony and Eugenia Emmanouil ("the Emmanouils"), their son Zachary, and Vincent Roggio ("Roggio"). There is a long and tortured history regarding the various transactions which need not be repeated here. Of these matters, the two that require this Court's attention are a mortgage loan the Emmanouils provided to Roggio and the attempted sale of West Belt Auto, the Emmanouils' business in Houston, Texas, to Roggio. Both deals fell apart, culminating in the present litigation. The Emmanouils sued for non-payment of the mortgage. Roggio sued for breach of the contract of sale of West Belt.

Over many years of litigation, the District Court produced numerous opinions. Ultimately, a jury returned a verdict in favor of the Emmanouils, and the District Court granted the Emmanouils' motion for attorneys' fees. Roggio now appeals the District Court's rulings on summary judgment, various pretrial motions, and the award of attorneys' fees. For the reasons set forth below, we will affirm the District Court's decisions, but modify the award of attorneys' fees.

## I. Background

We write primarily for the benefit of the parties and recount only the essential

facts.

The relationship between Zachary and Roggio began in 2001. At that time, Zachary was an associate at Concepcion, Rojas and Santos, LLP ("CRS"), a law firm in Florida. Roggio was one of CRS's clients. Zachary was assigned to represent Roggio in the <u>Haught</u> matter in state court in Florida. An effort to collect missing funds,[1] the <u>Haught</u> matter required at least one hearing in Florida on October 10, 2001. During that hearing, Roggio lied under oath.[2] Roggio alleges he did so with Zachary's imprimatur as a litigation strategy. For reasons not relevant here, on February 13, 2002, CRS moved to withdraw their representation of Roggio. The Florida state court granted the motion.

The termination of the firm's representation of Roggio did not end the relationship between Zachary and Roggio. They developed a personal friendship, leading them to enter into a variety of business ventures, some of which are the subject of the present case.

The two intertwined deals at issue here are an $850,000 mortgage loan that the Emmanouils provided to Roggio and the attempted sale of West Belt Auto to Roggio. Suffice it to say, the business deals did not go well. The Emmanouils sued Roggio,

---

[1] The merits and details of this matter are not relevant to the matter before us.

[2] Specifically, Roggio falsely asserted (1) that he was an attorney who had been a member of the Pennsylvania bar for 15 years and (2) that he had no prior felony convictions. The record of this testimony was not sealed, and the transcripts were available as a public record.

4

alleging that he failed to repay the mortgage loan. Roggio filed a separate action against the Emmanouils for breach of contract for the sale of West Belt Auto. Roggio's complaint included claims against Zachary and CRS for malpractice. Zachary was dismissed from the case when he filed for personal bankruptcy. The District Court ordered that the two actions be consolidated.

Roggio immediately sought the disqualification of counsel for the Emmanouils and Zachary. The District Court granted this motion, concluding that the joint representation of the Emmanouils and Zachary created a risk of disclosure of confidential information; specifically, information Roggio may have revealed to Zachary during Zachary's representation of Roggio. The District Court recognized that Zachary may be able to disclose attorney-client confidences to his own counsel as part of his defense, but that the Emmanouils should not benefit from those disclosures.[3]

The Emmanouils obtained new counsel, Louis Modugno, from McElroy, Deutsch, Mulvaney & Carpenter, LLP ("McElroy"). Roggio also sought to disqualify McElroy, essentially for the same reasons he sought disqualification of the Emmanouils' original counsel. Roggio alleged violations of RPC 1.6 (Confidentiality of Information), 1.9 (Duties to Former Clients) and 8.4 (Misconduct).[4]

---

[3] The confidential information forming the basis of Roggio's claim of attorney-client privilege was his false testimony in the Haught matter.

[4] New Jersey Local Civil Rule 103.1(a) provides that "[t]he Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court

The Magistrate Judge denied the motion, noting that McElroy never represented Roggio in any matter, and is currently not representing anyone who owes a duty to Roggio pursuant to any Rule of Professional Conduct. As such, RPC 1.6 and 1.9 were not implicated. As to RPC 8.4, Roggio argued that McElroy violated this rule by obtaining confidential information about the Haught hearing from Zachary. Roggio relied upon the District Judge's grant of a motion to seal the transcript of the November 19, 2007 hearing to support his argument that the only way McElroy could have learned of the import of the Haught testimony was through Zachary.

McElroy countered that it learned of the Haught matter from several of Roggio's submissions, independent of Zachary. Those submissions included (1) Roggio's counsel's Rule 2004 examination of Zachary in connection with Zachary's bankruptcy proceedings, (2) Roggio's counsel's cross-examination of Zachary during jurisdictional discovery, (3) Roggio's certification in opposition to CRS's motion to dismiss for lack of personal jurisdiction, (4) internet information supplied by Roggio's counsel in connection with a motion to amend, and (5) a Westlaw search. In addition, Zachary's deposition testimony and Roggio's certification were filed in support of Roggio's brief in opposition to CRS's motion to dismiss, and provided information on the Haught matter.

Based on Roggio's submission of part of the transcript from the Haught hearing,

---

shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law."

Mr. Modugno conducted further investigation and learned that Roggio was not a member of the Pennsylvania bar and had a criminal record. Roggio offered no evidence to contradict Mr. Modugno's declaration.

The Magistrate Judge concluded that Roggio had not met his burden in establishing that disqualification was warranted. That is, Roggio had not shown that McElroy assisted Zachary in violating any RPC. Roggio appealed to the District Judge, who affirmed the Magistrate Judge's decision.

Upon the close of discovery, CRS moved for summary judgment, arguing that the undisputed facts showed that, at the time of the alleged wrongdoing, no attorney-client relationship existed between CRS and Roggio and that Zachary was not an agent of CRS. The District Court granted this motion, concluding that Roggio failed to provide any evidence that Zachary acted with the apparent authority of CRS.

The remaining claims went to trial. The Emmanouils filed an in limine motion seeking to allow Zachary to testify during trial. The District Court granted the motion, and allowed Zachary to testify regarding "all relevant communications" with Roggio, excluding the Haught matter. The District Court also ruled that the Emmanouils could use the Haught matter to impeach Roggio, if appropriate. At trial, Roggio testified on direct at length about the Haught matter. The jury returned a verdict in favor of the the Emmanouils.

Following trial, the Emmanouils sought attorneys' fees pursuant to a term of the

mortgage loan. Roggio opposed the motion, arguing that not all of the work performed by McElroy was done in an effort to collect the mortgage. The District Court concluded that, after reviewing the documentation provided by the Emmanouils, the "request is both reasonable in light of the duration and contentiousness of this litigation, and sufficiently documented." (App. 32.) The District Court observed that throughout the long history of the case, "it has remained apparent to the Court that the Emmanouils' fundamental effort to collect $850,000 from Roggio under the Note has inexorably permeated the entirety of this litigation." (Id.)

## II. Analysis[5]

### Attorney-client privilege

Three of Roggio's claims are interrelated — his argument that the District Court's two in limine rulings were in error and his argument that the District Court erred by not disqualifying McElroy. These arguments focus on the disclosure of Roggio's testimony in the Haught matter, which Roggio argues is protected by attorney-client privilege.

According to section 68 of the Restatement (Third) of the Law Governing Lawyers, "[e]xcept as otherwise provided in this Restatement, the attorney-client privilege may be invoked . . . with respect to: (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal

---

[5] The District Court had jurisdiction under 28 U.S.C. § 1332; we have jurisdiction under 28 U.S.C. § 1291.

assistance for the client." Restatement (Third) of the Law Governing Lawyers § 68; see also In re Chevron Corp., 650 F.3d 276, 289 (3d Cir. 2011) (listing factors). Excluded from the privilege's protection is any advice that is not legal in nature, such as business advice, or communications made in the presence of a third party. Wachtel v. Health Net Inc., 482 F.3d 225, 231 (3d Cir. 2007) ("[T]he privilege will extend only to advice which is legal in nature. Where a lawyer provides non-legal business advice, the communication is not privileged. Similarly, the protections of the privilege are restricted to those communications which are made in confidence, since a client who speaks openly or in the presence of a third party needs no promise of confidentiality to induce disclosure." (internal citations omitted)).

However, a client can waive the privilege by disclosing the privileged information. Westinghouse Elec. Corp. v. Republic of the Phil., 951 F.2d 1414, 1423-24 (3d Cir. 1991) ("The privilege 'protects *only* those disclosures — necessary to obtain informed legal advice — which might not have been made absent the privilege.' Accordingly, voluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege." (quoting Fisher v. United States, 425 U.S. 391, 403 (1976) (emphasis added))). The disclosure can be made by the client or the client's attorney, if it either appears the attorney was acting with the apparent authority of the client or if the client later ratifies the attorney's disclosure. Restatement (Third) of the Law Governing Lawyers §§ 26, 27, 78, 79.

9

*Disqualification of McElroy*

We review the District Court's decision denying Roggio's request to disqualify McElroy for an abuse of discretion. Lazy Oil Co. v. WITCO Corp., 166 F.3d 581, 588 (3d Cir. 1999). "[T]o the extent that the questions underlying the disqualification motion are purely legal . . . our review is plenary." Id.

Before this Court, Roggio complains that Zachary's alleged disclosure of one specific communication — Roggio's testimony in the Haught matter — warrants the disqualification of McElroy. Roggio asserts that "it is without dispute that the law firm acquired actual knowledge of all of Roggio's confidences." (Appellant's Br. 31.) However, Roggio fails to point to any confidences that were disclosed, other than his perjury in the Haught matter.

As already discussed, McElroy learned of Roggio's perjury in the Haught matter through disclosures made by Roggio and independent investigations conducted by counsel based on those disclosures. Roggio offers only unsubstantiated assertions to rebut this evidence. Given the clear and unrebutted evidence that McElroy did not learn of the Haught matter from Zachary, we find no abuse of discretion in the District Court's decision to deny the motion to disqualify McElroy.

*In limine rulings*

"'[W]e review the district court's decisions to admit or exclude evidence for abuse of discretion, although our review is plenary as to the interpretation or application of a

10

legal standard underlying such a decision.'" In re Flat Glass Antitrust Litig., 385 F.3d

350, 372 (3d Cir. 2004) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d

Cir.1997)). Under this deferential standard, we will not disturb the District Court's

exercise of discretion unless there is a clear error or "no reasonable person would adopt

the district court's view." Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000)

(citation omitted). Unless otherwise barred, relevant evidence is admissible, and relevant

evidence is any evidence that tends to make a consequential fact more or less probable.

See Fed. R. Evid. 401, 402 & 403.

Over Roggio's objection that "Zachary's testimony should be precluded as

privileged attorney/client communication," the District Court granted the Emmanouils' in

limine motion seeking to allow Zachary to testify at trial. The District Court concluded

that

> Roggio has squarely placed his relevant communications with
> Zachary at issue in this case. The merit of that argument is not
> reasonably disputable. A review of Roggio's complaint, let alone
> the myriad briefs, certifications and exhibits submitted by Roggio
> during the years of motion practice in this case, cleanly [sic] indicate
> that Roggio's dealings with Zachary are central, at issue in this case
> in the claims against the Emmanouils and to his defenses against
> [the] Emmanouil's [sic] various claims against him.

> Simply put, the years-long relationship between Roggio and
> Zachary is either the very basis or at least essential to the issues tried
> before the Court. As such, to disallow Zachary's testimony, as
> Roggio seeks to do here under the guise of attorney/client privilege,
> is improper. The motion to permit Zachary to testify at trial
> regarding all relevant communications with Roggio will therefore be
> granted.

I note that there is no motion to seek to have him testify as to anything else which might implicate any privilege, but to try to use the privilege as a sword rather than the shield, even assuming that there was [an] attorney/client relationship, which seems to be disputed here, would not be allowed.

(App. 907-08.)

Roggio also sought to bar the Emmanouils' use of the Haught matter during trial. The District Court allowed the use of the Haught matter for impeachment purposes. (S.A. 803-09.)

We conclude that the District Court did not abuse its discretion in allowing Zachary to testify since there was no indication that Zachary's testimony would breach the attorney-client privilege. No evidence indicates that Zachary represented Roggio in connection with the mortgage loan the Emmanouils provided to Roggio. To the contrary, the evidence shows that Roggio had another attorney, Catherine Jannarone, representing him in connection with the mortgage loan. None of the communications between Roggio and Zachary in connection with the mortgage loan could possibly be protected by attorney-client privilege, since no attorney-client relationship existed.

As to testimony relating to the sale of West Belt, we similarly find that no attorney-client relationship existed. Many, if not all, of the discussions Zachary testified about included other parties. Statements made in the presence of third parties who are not subject to the privilege are not protected by the attorney-client privilege. Restatement (Third) of the Law Governing Lawyers § 71. Chevron, 650 F.3d at 289-90, Wachtel, 482

12

F.3d at 231.

Even if an attorney-client relationship existed between Roggio and Zachary with respect to the West Belt transaction, the District Court correctly noted that Roggio placed the West Belt transaction at issue when he filed his complaint, thus invoking an exception to the attorney-client privilege. Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994) ("The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.") In addition to raising the West Belt transaction as an issue in the complaint, Roggio deposed Zachary numerous times during discovery. During the depositions, Zachary was asked about the West Belt negotiations and related documents.

The District Court did not allow Zachary to testify on direct about any aspect of his representation of Roggio in the Haught matter. The District Court's order simply allowed the Emmanouils to use Roggio's public testimony in the Haught matter for impeachment purposes, should Roggio put his alleged status as an attorney in issue. Not only was this order very limited in its scope, but, as it turned out, Zachary did not testify on direct about the Haught matter.[6] Rather, Roggio's counsel asked Zachary about the

---

[6] At one point during his direct testimony, Zachary expressed concern that the question "kind of goes to when I was representing the previous client." (App. 142.) Mr. Modugno stopped Zachary, rephrased his question, and stated "I don't want to get into your prior representation of Mr. Roggio or any related entitiy." (Id.)

13

Haught matter on cross. Additionally, Roggio testified at length about the Haught matter during his direct testimony.

We conclude that the District Court ruled correctly that the attorney-client privilege is inapplicable. As such, the District Court did not abuse its discretion regarding the in limine rulings.

**Summary judgment in favor of CRS**

We review the District Court's order granting summary judgment de novo. Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010). "To that end, we are required to apply the same test the district court should have utilized initially." Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009) (quoting Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Md., 989 F.2d 635, 637 (3d Cir. 1993)).

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Azur, 601 F.3d at 216 (quoting Nicini v. Morra, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc) (citing FED. R. CIV. P. 56(c))).[7] To be material, a fact must have the potential to alter the outcome of

---

[7] FED. R. CIV. P. 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word — genuine 'issue' bec[ame] genuine 'dispute.'" FED. R. CIV. P. 56 advisory committee's note, 2010 amend.

14

the case.  See Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Azur, 601 F.3d at 216.  In determining whether summary judgment is warranted "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Chambers ex rel. Chambers, 587 F.3d at 181.  "Further, [w]e may affirm the District Court's order granting summary judgment on any grounds supported by the record."  Kossler v. Cristani, 564 F.3d 181, 186 (3d Cir. 2009) (en banc).

On appeal, Roggio argues that summary judgment should not have been granted because issues of material fact existed regarding CRS's liability for Zachary's malpractice, based on Zachary acting  as CRS's agent. [8] Assuming, without deciding, that Zachary did engage in malpractice, there was no evidence to support the claim that Zachary was an agent of CRS, acting with CRS's direct authority.  Therefore, the only other avenue available to Roggio in support of his claim is an argument that Zachary acted with the apparent authority of CRS.

---

[8]  Significantly, the evidence shows that CRS's representation of Roggio ended when the firm withdrew from representing him in the Haught matter on February 13, 2002.  Roggio never entered into another retainer agreement with CRS on any other matter.  Given the lack of a direct relationship with CRS, the only way for Roggio's claim of malpractice to succeed is based on an agency argument.

15

In New Jersey, "[t]he party seeking to rely on the agency relationship based upon apparent authority must establish: '(1) that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal.'" Staron v. Weinstein, 701 A.2d 1325, 1327 (N.J. Super. Ct. App. Div. 1997) (quoting Homa v. Friendly Mobile Manor, Inc., 612 A.2d 322, 335 (Md. Ct. Spec. App. 1992)).

The District Court concluded that no evidence indicated "anyone in any capacity at CRS 'manifested consent' or 'knowingly permitted' Zachary to represent Roggio" after the firm's withdrawal in the Haught matter. (App. 17.) The District Court also noted that Roggio failed to establish the third element — that he relied upon the representation and will be harmed by that reliance. As the District Court stated, "the Court cannot analyze evidence that simply does not exist in the record." (App. 17.) We, like the District Court, have found nothing that would indicate Roggio relied on Zachary being an employee of CRS in making any of his business or legal decisions. As no genuine issue as to a material fact existed, summary judgment was appropriate.

**Attorneys' fees**

Pursuant to a provision in the mortgage loan, the Emmanouils sought attorneys' fees after the verdict was entered in their favor. The District Court granted the amount sought in full.

Roggio appeals this decision, arguing that "the total fees granted were for services well beyond the scope of the single claim covered by a contract provision providing for recovery of reasonable attorney's fees needed to enforce that one agreement." (Appellant's Br. 48.) Additionally, Roggio argues that the fees should be reduced by the amount of time spent on claims that were unsuccessful.

"We review the District Court's attorneys' fees award for abuse of discretion 'which can occur if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous.'" In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 299 (3d Cir. 2005) (quoting In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 727 (3d Cir. 2001)). "Notwithstanding our deferential standard of review, it is incumbent upon a district court to make its reasoning and application of the fee-awards jurisprudence clear, so that we, as a reviewing court, have a sufficient basis to review for abuse of discretion." Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 196 (3d Cir. 2000).

Here, the District Court made its reasoning clear. However, we find that it abused its discretion in concluding that it would be difficult to parse out the mortgage-related

17

work from other work.  Based upon our independent review of the record, we find that 90% of the work done related to the recovery under the mortgage note.  Therefore, we conclude that the attorneys' fee award should be reduced by 10%.

## VI.    Conclusion

For the reasons stated above, we will affirm the District Court's grant of summary judgment in favor of CRS, the District Court's rulings on the in limine motions, and the District Court's denial of Roggio's motion to disqualify McElroy.  We will vacate the award of attorneys' fees, and remand the matter to the District Court for action consistent with this opinion.